## *In re* PETITION OF WILLIAM BOHLER WALKER.

*Opinion filed December 16, 1902—Rehearing denied February 18, 1903.*

1. TAXATION—*the constitution does not, of itself, exempt property from taxation.* Section 3 of the constitution does not, of itself, exempt any property from taxation, but only authorizes the enactment of general laws for such purpose.

2. SAME—*statutes exempting property from taxation are strictly construed.* All statutes for the exemption of property from taxation are to be strictly construed against the exemption.

3. SAME—*exemption cannot be raised by implication.* The intention to exempt property from taxation must affirmatively appear and cannot be raised by implication.

4. SAME—*ambiguities operate in favor of taxation.* Ambiguities in tax exemption laws as to what is exempt operate against owners of the property and in favor of the public.

5. SAME—*what essential to exempt church property.* It is essential to the exemption of church property from taxation under the second subdivision of section 2 of the Revenue act, that the same be "actually and exclusively used for public worship."

6. SAME—*definition of the term "public worship," as used in exemption statute.* The definition of the words "public worship," used in the provision of the statute exempting church property from taxation, must be broad enough to include within the beneficial operation of the statute every variety of religious faith and belief and every religious philosophy of life or death.

7. SAME—*definition of "public worship," as applied to orthodox churches.* The term "public worship," as applied to a church which accepts the inspiration of the scriptures and the divinity of Jesus, means the assembling together of the members in a congregation, together with others that may choose to come, for the purpose of worshiping God according to the religious forms of the particular organization in question.

8. SAME—*what church property is not exempt.* Premises separated by a public alley from the lot occupied by the church building and rectory, upon which is a building the lower floor of which is used for Sunday school, for meetings which cannot be held in the church auditorium and for meetings of sub-organizations of the church, and the upper floor for janitor's rooms, is not exempt from taxation.

WILKIN, CARTWRIGHT and HAND, JJ., dissenting.

AUDITOR'S certificate of appeal from decision of Board of Review of Will county.

The board of review of Will county, upon a hearing, decided lot No. 2, block 19, original town of Joliet, to be exempt from taxation. The decision was reviewed by the Auditor of Public Accounts and disapproved, and the matter has been certified to this court in pursuance of the provisions of section 35 of the general Revenue act, approved February 25, 1898, (Starr & Cur. Supplemental Stat. 1902, chap. 120, par. 109, p. 1117,) and a motion has been entered by the Auditor to set aside and remove the decision of the said board of review.

The statement of facts certified by the board of review to the Auditor is as follows:

"The corporation of Christ church, Joliet, Illinois, owns and occupies for the purpose of the corporation, namely, public worship according to the rules and observances of the Protestant Episcopal Church of the United States of America, lots 2, 3 and 4, block 19, original town of Joliet. Said lots 3 and 4 have been owned and occupied by the corporation with a church and rectory for many years. Said lot 2 was acquired by the corporation, by purchase, about 1895, for the purpose of enlarging the facilities of the parish for public worship, including Sunday school and such sub-organizations of the church and parish as are conducted in connection with and part of the public worship of the said church. Said lots are each 66 by 150 feet, being a total of 198 feet on Joliet street by 150 feet on VanBuren street, and is a parcel of ground of reasonable size for the location of the church building and affords no more space than is required. The rectory or residence of the minister is located on the east part of said lots 3 and 4, and is assessed as residence property, though in construction it is actually connected with the church building. Lot 2 is separated from lots 3 and 4 by a public alley 16 feet wide. Christ church is the only place of public worship for the Episcopalians in a population of 40,000 people. The whole machinery, excepting one small chapel in a distant part

of the city, is concentrated on these three city lots 1, 2 and 3, as hereinbefore described, and Christ church parish is one of the largest in the State outside of the city of Chicago. There is no revenue or income from the property claimed to be exempt. It is used exclusively for public worship, and the three lots are only of a reasonable size for the location of the church. The only sworn testimony heard by the board of review was that of William Bohler Walker, rector of the church. The conclusion of the board of review was based on sworn testimony and such facts as were learned from the town assessor and others having knowledge of the situation, and was and is that the said lot 2 is exempt from taxation for the reason that it is church property actually and exclusively used for public worship, owned by the congregation; and that the entire holding of the congregation in land is no more than of reasonable size for the location of the church buildings."

Appended to such statement, and made a part thereof by the certificate of the board of review, are the minutes taken by the board of the sworn testimony of William Bohler Walker, rector of said church, as follows:

"The property was a lot and dwelling house, separated from the church building by a public alley 16 feet wide. The church building is close on the line of the alley. There is no room on the church lot for the erection and maintenance of such a building that is essential to the purposes of the corporation, the church standing close on the street line and alley line. The entire space, aside from that occupied by the church building, is occupied by a residence for the minister, and such residence is assessed and taxed. The church lot is lots 3 and 4, block 19, original town of Joliet, and is a plot of ground 132 by 150 feet. Christ church has owned and occupied said lots 3 and 4 for church purposes many years. The development of the church work required more room, and said lot 2 was purchased about 1895 for the express purpose of providing more room for accomplishing the pur-

poses of the corporation, namely, Sunday school purposes, social purposes of the congregation, and such meetings of the congregation as cannot be held in the auditorium or the room consecrated and set apart for the religious exercises of the congregation.  This lot 2, when purchased, was occupied by a dwelling house, which was prepared for the use needed by removing partitions, making rooms suitable for use until such time as the corporation can erect a suitable building for its needs.  The building has not been used for any secular purpose whatever from the time when acquired by the corporation to April 1, 1902. About May, 1902, the rooms on the second floor were, and now are, occupied as janitor's rooms by the janitor having the care of the church building and Sunday school rooms.   There is no revenue or income of any kind or character from this building and property, said lot 2. The entire holding of said corporation is said lots 2, 3 and 4, each 66 by 150 feet, and is scant room for the actual needs of the parish for public worship.   It is now used exclusively for public worship, and it is the purpose of the corporation to so use and occupy it permanently."

COLL MCNAUGHTON, and COWING & YOUNG, for petitioner.

H. J. HAMLIN, Attorney General, for the Auditor.

LYMAN, BUSBY & LYMAN, for petitioner, on rehearing.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The constitutional direction set forth in section 1 of article 9 of the constitution of 1870, that such public revenue as is needful shall be secured by levying taxes by valuation so that each person or corporation shall pay a tax in proportion to his, her or its property, is modified by section 3 of the same article, which provides that the General Assembly may, by laws general in their operation, exempt from taxation such "property as may be

used exclusively for agricultural and horticultural societies, for school, religious, cemetery and charitable purposes." Section 3 does not exempt any property devoted to such purposes from taxation, but has efficacy only to authorize the General Assembly to provide for such exemptions by a general act enacted for that purpose. (*People* v. *Anderson,* 117 Ill. 50.) The General Assembly, at its session in the year 1872, in pursuance of these constitutional provisions, adopted a general act entitled "An act for the assessment of property and for the levy and collection of taxes," approved March 30, 1872, (Starr & Cur. Stat. 1896, chap. 120,) and in section 2 of said act specified the classes of property which, in the wisdom of the law-making body, should not be called upon to contribute to the revenues of the State. The second subdivision of said section 2 of said act relates to and governs the exemptions of the property of religious corporations and organizations. It is as follows: "All church property actually and exclusively used for public worship, when the land (to be of reasonable size for the location of the church building) is owned by the congregation." It will be observed that while the constitution authorizes the General Assembly to relieve all property "used exclusively for * * * religious purposes" from assessment for taxation, the law-making department of the State did not deem it the better part of wisdom to extend the exemption to that extent, and only authorized the exemption of such "church property" as should be exclusively used for "public worship."

It then arises for decision whether said lot No. 2 is used for "public worship." There are many uses, religious in purpose, to which property may be devoted other than that of "public worship." It is, therefore, clearly not sufficient that the lot and building thereon is used for "religious purposes," but it is essential that it shall be used for that particular character of "religious purposes" which is properly known as "public worship."

All statutes for the exemption of property from taxation are to be strictly construed against the exemption and in favor of the State and taxation. An exemption cannot be raised by implication, but the intention to relieve from the burden of taxation must appear affirmatively. If there be an ambiguity as to what is exempt, it must operate against the owners of the property and in favor of the public, and all reasonable doubts as to the proper interpretation of a statute providing for exemptions from taxation must be solved in favor of the State. (*Northwestern University* v. *People*, 80 Ill. 333; *Bloomington Cemetery Ass.* v. *People*, 170 id. 377; *Sanitary District of Chicago* v. *Martin*, 173 id. 243; *People* v. *Chicago Theological Seminary*, 174 id. 177.) It is therefore essential to the exemption of church property under said second subdivision of section 2 of the Revenue act that it shall be "actually and exclusively used for public worship," within the meaning of those words as employed in the statute. The words "public worship" do not seem to have been defined by the courts when used in a statute as descriptive of property to be exempted from the burden of taxation. If susceptible of more than one meaning the words are, as is the statute itself, to be given the meaning which is the most favorable to the right of the State to subject the property to taxation. A more liberal construction and definition might, perhaps, be adopted if it became necessary to construe those words when employed in a statute designed to protect assemblages of people from interruption and disturbance. But that question is not here involved.

In *Hamsher* v. *Hamsher*, 132 Ill. 273, we were called upon to determine whether the Young Men's Christian Association of Decatur, Illinois, was a corporation organized for the purpose of "religious worship." If formed for the purposes of "religious worship" the association could not take a tract of one hundred and sixty acres of land devised under the will of one David F. Hamsher, for the

reason section 42 of the "Act concerning corporations," approved April 18, 1872, (1 Starr & Cur. Stat. 1896, p. 1026,) prohibited any corporation "formed for religious purposes" from receiving, by devise, gift or purchase, land exceeding in quantity (including that already held by the corporation) ten acres, etc. We there adopted one of the definitions given by Mr. Webster of the word "worship," as follows: "The act of paying honor to the Supreme being; religious reverence or homage; adoration paid to God, or a being viewed as God," and held that the association, though formed to "promote growth in grace and christian fellowship among its members and aggressive christian work, expressly by and for young men, and to seek out and aid worthy poor," was not to be regarded as formed for purposes of religious worship, and hence not inhibited to accept and hold the land devised to it by said will. Worship, as there defined, may be that of an individual, and for that reason, if not for others, the definition of the word is not sufficiently comprehensive to be accepted as a definition of the term "public worship" found in the statute under consideration.

Section 3 of article 2 of the constitution of 1870 is as follows: "The free exercise and enjoyment of religious profession and worship, without discrimination, shall forever be guaranteed; and no person shall be denied any civil or political right, privilege or capacity, on account of his religious opinions; but the liberty of conscience hereby secured shall not be construed to dispense with oaths or affirmations, excuse acts of licentiousness, or justify practices inconsistent with the peace or safety of the State. No person shall be required to attend or support any ministry or place of worship against his consent, nor shall any preference be given by law to any religious denomination or mode of worship."

Religion is defined by Mr. Webster to be "any system of faith and worship; as the religion of the Turks, of Hindoos, of Christians; true and false religion." In *Board*

*of Education* v. *Menor*, 23 Ohio St. 250, the word "religion,"
as used in the constitution of the State of Ohio, was de-
fined to mean "the religion of all mankind, and not the
religion of any class of men." Said section 3 of article 2
of our constitution therefore constitutes a guaranty of
absolute freedom of thought and faith, whether orthodox,
heterodox, christian, Jewish, catholic, protestant, liberal,
conservative, Calvinistic, Armenian, Unitarian or other
religious belief, theology or philosophy, and also the
right of the free exercise and enjoyment of religious pro-
fessions and worship of any variety or form, the only
restraint upon the free exercise of liberty of conscience
being, that oaths and affirmations shall not thereby be
dispensed with, licentious acts excused or practices jus-
tified which are dangerous to the peace and safety of
the State.

Any definition of "public worship" to be acceptable
must be sufficiently broad and comprehensive to include
within the beneficial operation of the statute of exemp-
tions the church property of all congregations and every
denomination or form of religious faith and worship.
The difficulties attending the task of formulating a defi-
nition of the term "public worship" so that it will be ap-
plicable to and comprehend every variety of religious
faith and belief and every religious philosophy of life
and death, and omit none, is apparent. The question here
in hand is, what is meant by "public worship" as appli-
cable to Christ church of the city of Joliet, a corporation
"organized for the purpose of public worship according
to the rules and observances of the Protestant Episcopal
Church of the United States of North America?" This
church accepts the doctrine of the inspiration of the old
and new testaments and of the divinity of Jesus Christ.
Worship in that church is consequently the act of paying
honor, religious reverence, homage and adoration to the
God of the bible. Public worship in that church is there-
fore the assembling together of the members of that

church in a congregation, together with others who may choose to come, for the purpose of worshiping God in accordance with the rules and regulations and religious forms of that organization. "Public worship," as applied to Christ church, means congregational worship of Almighty God. In the United States the word "congregation" means the members of a particular church who meet in one place to worship. (Bouvier's Law Dic. title "Congregation.")

Every church building which has been constructed for or is to be devoted to the purpose of providing a room or place in which the congregation of the church, and other persons who may desire to attend, may assemble for the purpose of engaging in those devotional exercises which are properly known as "religious worship," should, if in no part devoted to secular uses, be regarded as exclusively devoted to public worship, and, together with the land or lot, of sufficient size for the location of the building, be deemed exempt from taxation, though such church building should also contain such adjuncts to the audience room or place for the assembling of the congregation as room for the safe keeping of the outer coats, wraps, umbrellas, etc., of the persons who are to participate in the religious exercises of worship, or rooms required in order to secure the comfort of such persons composing such worshiping congregation, or a study room for the use of the pastor in the preparation of his sermons, or rooms for Sunday schools or for sub-organizations of the church, or other purposes wholly non-secular and as aids to general religious designs of the congregation, provided the title to the exempted property is in the church organization. A church building which has been erected or provided by the church organization for the purpose or with the view of providing a room or place for public worship does not lose its character as a church building exclusively devoted to "public worship" by reason of the occasional, or even regular,

additional use of the audience room for other religious purposes of the organization, though such other purposes are not strictly "public worship," but only auxiliaries intended to aid in the growth and development of the religious faith and character of the communicants of the church and others, and advance the general welfare and purposes of the organized church.

Church buildings which are maintained for the purpose of providing a room or place where audiences or congregations are to assemble for the purpose of engaging in "public worship," and which would not be so maintained but for the desire to provide such room or place, are in the true sense maintained exclusively for that purpose, though, as we have before said, the building may also be used for other non-secular purposes consistent with and in aid of the primary and sole purpose for which the building is maintained. It appears here that the building on said lot No. 2 here sought to be exempted from taxation has no room or place in it for "public worship," but that the church building of said Christ church having the room for the purpose of "public worship" of the congregation of the church is situated on another lot, to-wit, lot No. 3. It further appears from the record of the case as made by the board of review, that said lot 2 is separated from lot 3, on which the church building is maintained for "public worship," by a public alley sixteen feet in width; that the building situate on said lot 2 was erected for and was formerly used as a dwelling until purchased by the congregation of Christ church; that the rooms on the second floor are now used and occupied by the janitor of the church,—whether as a residence for the janitor and his family, or rooms in which he may sleep, or in which to store articles used in the care of the church, is not disclosed; that the first floor of the building is used (1) for Sunday school purposes; (2) "for social purposes of the congregation;" (3) for such meetings of the congregation as cannot be held in the

auditorium or in the room set apart and consecrated for the religious exercises of the congregation; and (4) for the sub-organizations of the church.

The meetings of the congregation to be held in this building are "such as (for some reason not disclosed) can not be held in the auditorium or room (in the church building) set apart and consecrated for the religious exercises of the congregation." These meetings of the congregation are clearly not for "public worship," for if they were, they could be held in the auditorium or room set apart in the church building for such meetings of the congregation. Such meetings may have been or may be to consider merely business interests of the church or benevolent or charitable undertakings, or matters pertaining to the welfare of the church or of its pastor or members of the congregation. In the absence of affirmative proof as to the purposes and character of such "meetings," the doubt, if any should or ought arise whether they were for purposes of "public worship," must be, as we have seen, solved in favor of the State and against the exemption of property from taxation. "Sub-organizations of the church or of the congregation" may fairly be entitled to the presumption that they were created and are conducted for the highest and most commendable uses and purposes, yet it cannot be assumed the exercises of such sub-organizations constitute "public worship." In the absence of affirmative proof that such is the case, the assumption, as we have seen, is to the contrary, for the right to enjoy exemption from taxation can only be established by strict proof of the existence of all facts necessary to create the exemption. The exercises at Sunday schools are more nearly akin to those of "public worship." The use of the auditorium or other room in a church building proper for the exercises of a Sunday school would be entirely consistent with the view that such church building was exclusively used for the purpose of public worship; but the fact that one or more of

the rooms on the first floor of this building on lot No. 2 is or are used as Sunday school rooms cannot give to the whole building, and the lot on which it stands, the character of a building "used exclusively for public worship."

The privilege of exemption from taxation was not established, and the board of review erred in declaring said lot No. 2 to be exempt. The motion of the Auditor of Public Accounts for an order to set aside and remove the decision of the board of review must be and is allowed.

The decision will be set aside and removed.

*Motion allowed.*

WILKIN, CARTWRIGHT and HAND, JJ., dissenting.