### 186. AMOROUS v. THE STATE.

1. Section 929 of the Penal Code was not intended to dispense with the substance of good pleading, and there are some offenses where the charge can not be laid in the exact language of the code, and, for this reason, the section uses the additional words, "so plainly that the nature of the offense charged may be easily understood by the jury." But the words of a statute are to be construed according to their ordinary significance, and in connection with the context.

2. Judged by the foregoing rule, an indictment under the Penal Code, § 342, is sufficient which alleges the carrying of a pistol to "a place of public worship," and locates that place by name. The term "a place of public worship," as it appears in § 342, ex vi termini imports the gathering and presence of persons for religious worship, whether it be at a place usually devoted to that purpose or not.

3. The evidence is wholly circumstantial, and is not sufficient to show the defendant's guilt to the exclusion of every other reasonable supposition.

Certiorari, from Greene superior court—Judge Lewis. December 17, 1906.

Submitted February 18,—Decided February 25, 1907.

*Park & Park,* for plaintiff in error.

*J. E. Pottle, solicitor-general, James Davison,* contra.

RUSSELL, J. Ball Amorous was tried in the county court of Greene county, on an indictment for a misdemeanor. The material parts of the indictment were as follows: "charge and accuse . . Ball Amorous with the offense of a misdemeanor, for that the said Ball Amorous did, on the 4th day of July, 1906, in the county aforesaid, carry about his person a pistol to a place of public worship, to wit, Sanders Chapel Baptist Church, Colored." Before pleading to the merits he demurred to the indictment, on several grounds, but the only one insisted upon is the 3d ground, which is as follows: "Said indictment is defective in that it does not allege that divine worship or services were being held at the time it alleges the offense to have been committed, and fails to allege that any public gathering of any kind was being held at the time." The demurrer was overruled. The case then went to trial before the jury, and the defendant was convicted. The case was certioraried to the superior court, alleging errors in overruling the demurrer by the county judge, and that there was no evidence to sustain the verdict. The evidence, as appears from the answer of the judge of the county court, was as follows: Spot McWhor-

ter testified: "I never saw the defendant before the 4th day of July, 1906. I saw him then at Sanders Chapel Baptist Church, Colored, in Greene county, at a Sunday-school celebration going on there. I saw Ball there with a pistol. He took it out of his pockets and held it in his hand. He was going across the churchyard, and said he was not asleep and dared any one to say he was. He was about 15 yards from the church house. I had not seen him there before, but saw him afterwards. He was not just driving by. He is the same man. There are a good many his size, but his features are different. The public road runs near the church. He was in a buggy, driving from the church towards the road. It was about 3 p. m. I was talking to Lena Cody. Sackett Sanders and Yank Sanders were around him. They were selling at the tables. Poll Daniel was Sunday-school superintendent. They practiced for the celebration beforehand. Woodville and Mount Zion Sunday-schools were invited. They had prayer and Sunday-school songs. It was not Sunday. The meeting had not broke up." Yank Sanders testified: "Have known Ball Amorous a year or two. Saw him at the Sunday-school convention. He left soon after I saw him. He had a pistol. He came driving up in the crowd, and Spot hollered at him and asked him if he was asleep or drunk. He snatched his pistol out. It was about 3:30 p. m." In order to avoid a traverse, the following agreement, amendatory of the answer, was made and appears in the record, to wit: "It is agreed that neither witness saw the defendant until he was on the church grounds, and this agreement is made before the judge of the superior court of the Ocmulgee circuit at the trial of the certiorari. This Dec. 17th, 1906." This agreement was signed by counsel for the State and defendant. Upon the hearing the judge of the superior court overruled and dismissed defendant's certiorari; and the judgment of the judge in overruling the certiorari is assigned as error.

Only two questions are presented for consideration: (1) should the certiorari have been sustained because the indictment was defective? (2) If the indictment is good, was the evidence insufficient to authorize a conviction; and should the certiorari, for that reason, have been sustained? The Penal Code, §929, declares that "every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct, which states the offense in

the terms and language of this code, or so plainly that the nature of the offense charged may be easily understood by the jury." And this indictment is in the words of the statute. The section has been often construed. It was not intended to dispense with the substance of good pleading, and there are many charges where the offense can not be described in the terms and language of the code, and such cases are covered by the additional words, "so plainly that the nature of the offense charged may be easily understood by the jury." It means that an indictment conforming substantially to its requirements will be sufficient, but it is not designed to deny to one accused of crime the right to know enough of the particular facts constituting the alleged offense to be able to prepare for trial. The indictment charges that Ball Amorous "did, on the 4th day of July, 1906, in the county aforesaid, carry about his person a pistol to a place of public worship, to wit, Sanders Chapel Baptist Church, Colored, . . contrary to the laws of said State, the good order, peace, and dignity thereof." We agree with the counsel for plaintiff in error that under § 342 of the Penal Code, it certainly would not be a crime to carry a deadly weapon to a church house if no religious services were being held there, nor to carry one to the usual place of holding elections. But the words used in the statute are each of them descriptive not so much of places as of *gatherings* for the purposes named. The first one mentioned is a court of justice; next, an election ground or precinct; thirdly, any place of public worship; and finally, as if to impress the idea of *gatherings* of people, instead of conveying any prohibition as to any locality except while being used for a gathering, the section continues, "any other public gathering in this State." It is not the *court-house* (which means the *place* where court may be held), but the gathering at *the court of justice*, whether that gathering surround the court in a court-house, or some other building, or be gathered (as justices' courts frequently are) under no other canopy than the blue vault of heaven. And so it is with an election ground or precinct; the words naturally and reasonably refer (when given their ordinary signification in the sense in which they are used in the section), not to the place generally, but to the gathering at the place at the particular time when an election is being held. For it is a matter of common knowledge that the place or ground where the election is held, in many cases, is

a private home or place of business which is not used for election purposes oftener than once in two years. And a *place of public worship* is not necessarily a church, nor is the term synonymous with a *church;* and, in the connection in which the words are used in §342, they mean the gathering of individuals for public worship, at whatever place they may be, whether in the open air, under a tent, beneath an arbor, in a warehouse, and sometimes even in an opera-house. Words are to be given their ordinary significance with special reference to the connection and sense in which they are used; and so we think it plain that it is the purpose of §342 to protect all public gatherings, except militia musters, from the presence of deadly weapons, and that the section plainly expresses that intention. The defendant is entitled to be put on notice as to the place of public worship to which he carried the pistol; and hence the indictment named "Sanders Chapel Baptist Church" as the place. But the defendant, being presumed to know the law, and knowing (being informed by the indictment) of the particular point or location where he is alleged to have carried the deadly weapon, the terms of the indictment, by the use of the words "public worship," not only conform with the terms of the code, but allege such a gathering of a distinctive kind as amply enables the defendant to prepare his defense, and will result in his acquittal unless it be proved that at Sanders Chapel Baptist Church, at the same time that he carried the pistol, public worship was going on and in existence. Section 342 could perhaps be amplified and clarified to some degree, and the original act was not codified exactly as passed, but if any reasonable construction is to be given to its words in connection and as a whole, there was no error in overruling the demurrer.

The contention of the plaintiff in error, that the evidence did not authorize the verdict, rests upon failure on the part of the State to prove that he carried the pistol 'to the church; and the case of *Modesette* v. *State,* 115 *Ga.* 582, is relied upon. We are of opinion that for lack of evidence, the judge of the superior court should have sustained the certiorari, in view of the ruling of the Supreme Court above cited, which seems to be identical with the present case. There is no more proof in this case that the defendant was not given or loaned the pistol of which he was seen in possession than in the *Modesette* case. The burden is on the

State to overcome the presumption of innocence, and the presumption of an innocent carrying, instead of an illegal carrying, which exists in favor of the defendant, and to show, as circumstantial evidence was relied upon to the exclusion of every other reasonable hypothesis, that the defendant carried the pistol to the public worship. "Criminal laws are construed strictly; and so construing this section of the Penal Code, one who goes to a public gathering, having no pistol upon his person at the time he arrives at the place where the gathering is to be, and after having reached there and mingled with the other persons assembled, becomes possessed, innocently or designedly, lawfully or unlawfully, of a pistol, is not guilty of any offense under this section, although after having become possessed of the pistol he may retain possession thereof and move about from place to place and use the pistol for purposes of offense or defense. Coming into possession of a pistol while *at* a public gathering is not carrying a pistol *to* a public gathering."

*Judgment reversed.*