28495. LEGGETT et al. v. MACON BAPTIST
ASSOCIATION, INC.

INGRAM, Justice.

The controlling issue to be decided in this case is whether the real property owned and used by the Macon Baptist Association, Inc., is a "place of religious worship," as that term is used in the Georgia Constitution and implementing statute, so as to exempt the Association from the payment of ad valorem taxes. The trial court determined, on motion for summary judgment, that the Association is exempt, and the taxing authorities have now brought that judgment here for review.

I.

Article VII, Sec. I, Par. IV of the 1945 Constitution of Georgia (Code Ann. § 2-5404) authorizes the General Assembly to exempt from taxation *"Places of religious worship* or burial, and all property owned by religious groups used only for residential purposes and from which no income is derived . . . all intangible personal property owned or irrevocably held in trust for the exclusive benefit of religious . . . institutions, no part of the net profit from the operation of which can inure to the benefit of any private person." (Emphasis supplied.) The

implementing statute found in Code Ann. § 92-201 uses the same language to exempt property of a religious institution from ad valorem taxation although neither specifically defines "places of religious worship," the provision under which the tax exemption is claimed in the present case. These broad provisions have been interpreted generally to mean, however, that, "if the property is used primarily for either profit or purposes other than the operation of the institution, it is not exempt from taxes." *Church of God v. City of Dalton,* 216 Ga. 659, 662 (119 SE2d 11). We, therefore, draw from the *Dalton* decision the general rule that, in applying the exemption authorized by basic Georgia law to the facts in the individual case, we must look to the use of the property, not merely its ownership, and we must also look to the primary use of the property to determine whether it is exempt from taxation. In addition, we are mindful, in applying these principles, that all tax exemptions are to be strictly construed since taxation is the rule and exemption is the exception. *Brandywine Townhouses, Inc. v. Joint City-County Bd. of Tax Assessors,* 231 Ga. 585 (203 SE2d 222).

It is from this background that we proceed to the specific issue presented. Is the primary use of this property shown to be as a place of religious worship? The facts are not disputed and the trial court's clear and well-stated findings show the following:

"The Macon Baptist Association is served by an ordained Missionary Baptist Minister who is called to his position as Associational Missionary like other Baptist Pastors. He is furnished a pastorium like any other Baptist Pastor. No commercial activities of any kind are carried on by the Association, and none are conducted in its building. The Macon Baptist Association is supported by its 47 associated Baptist Churches with their 34,000 members, by voluntary contributions, and its facilities are available to all of its associated churches for group meetings, for committee and departmental work of the association, and to any interested group for religious and worship purposes. Other than the administrative work of the association, there is a pastor's conference held once and occasionally twice a quarter on a Monday afternoon,

which is a religious service primarily for the fellowship and inspiration of the pastors of the associated churches, although laymen also attend, and the format includes prayer, the singing of hymns, the giving of testimonies, and the sermon. No business is transacted at the services. No religious service is conducted on Sunday mornings, but on Sunday afternoons various groups meet in the building and engage in worship, though this does not occur on every Sunday afternoon. Also, there are held in the buildings seminars promoting the work of the churches; meeting of heads of Women's Missionary Unions, Royal Ambassadors and Brotherhoods; conferences concerning day care nurseries, kindergartens, and senior citizen's clubs; and seminars for the American Baptist Theological Seminary for Negro ministers and laymen.

"The basic function of the Associational Missionary is coordination, training and promotion. He exercises these functions for the Association just as a pastor executes and carries out similar responsibilities as a minister in a local church. He also does personal counselling with individuals and has worship meetings with representatives of the Association.

"The Association has three employees. These include the Associational Missionary, his Secretary, and a week-day minister's consultant. In the performance of his administrative duties, the Associational Missionary visits churches, meets with various committees, counsels with pastors and other individuals with regard to church work, visits hospitals, especially with the ministers and their families and other people who may be within the leadership of the Associational structure, gets out communications and promotes all the missionary work of the Association. Records of the work performed are kept on file in the building.

"The building was formerly a 6-room residence purchased in 1969 and occupied by the Association in 1970. A partition was knocked out between two rooms and new lighting was installed, to form the chapel. This chapel occupies about 25 percent of the space in the building and is furnished with metal chairs, arranged in aisle form, hymn books, a Bible, a podium and a piano.

In addition to the chapel, there is a kitchen, restrooms, closets, a study for the Associational Missionary, an office for his secretary, and an office for the week-day minister's consultant. The exterior has the outside appearance of a residence, with a carport and a parking area. It does not have a cross on it. Prior to moving into this building, the Association worked out from the Ingleside Baptist Church. The sign outside the building says, 'Macon Baptist Association office.' Sunday-School and Church services, in the common every-day language of Protestants attending religious services, are not held in this building."

## II.

We have said we have no authoritative definition of the words "places of religious worship" under the law of Georgia. The phrase itself appeared in the Georgia Constitution of 1877, but the debates of the constitutional convention thereon shed no light upon the framers' intended meaning of these words, and the subsequent inclusion of the same provision in later Constitutions similarly added no illumination to their meaning. Prior decisions of the two appellate courts of our state are helpful but also do not provide a specific definition of "places of religious worship." In *Amorous v. State,* 1 Ga. App. 313, 316 (57 SE 999), the Court of Appeals said (with reference to a criminal statute making it a misdemeanor to carry a weapon to a place of public worship) that a place of public worship was not necessarily a church, but included *"the gathering of individuals for public worship,* at whatever place they may be." The case of *Trustees of First M. E. Church v. City of Atlanta,* 76 Ga. 181, 195, which was later overruled on its holding that churches were exempt from paving assessment, spoke of the purpose of the exemption as being the prevention of "impositions . . . too onerous to be borne by *worshiping congregations."* (Emphasis supplied.) *Wardens of St. Mark's Church v. Mayor of Brunswick,* 78 Ga. 541 (3 SE 561), equated "religious worship" with "public worship." At best, these cases express a "feeling" that the words "religious worship" import a concept of a congregation assembling in a place open to the public to honor the Deity through reverence and homage. The word

"worship" alone is defined by Webster as an "act of paying divine honors to a deity; religious reverence and homage." In Black's Law Dictionary, it is defined in terms of "religious service" and "religious exercises." These definitions express, we believe, the generally accepted public notion of thinking of worship in terms of congregational worship services intended to express adoration and homage for the Deity. For the Christian Church Universal, this would include saying prayers, singing hymns, reading scriptures, and the giving of testimonies and sermons in a congregational setting. It would also include the traditional sacraments and rites of baptism, marriage, communion and funeral services.

The Macon Baptist Association capably argues that the activities carried on in this building constitute an essential part of their worship because service through good works is among the highest forms of love, homage and reverence to God. This argument is cogent and is undoubtedly correct. But its truth does not mean this particular property is used primarily as a "place of religious worship" under the findings of the trial court. While some religious exercises and services are held on the property, it is nonetheless a fact that the primary use of the property is for coordination, training and promotional work in furtherance of the administrative duties of the Association. This is conceded in the brief of the Association and was so found by the trial court. This use, though a vital aspect of the exercise of Baptist and other Christian faiths, clearly does not include congregational worship services and administration of traditional sacraments. It is this difference which requires the Association to be taxed in contradistinction to the Baptist churches themselves that are served by the Association.

Decisions of other jurisdictions do not authorize a different result in this case. There are language differences in our law and the law of other jurisdictions. Nevertheless, the decision we reach here is consistent with the view held generally in a number of other jurisdictions that exemptions from taxation of places of religious worship, unless stated otherwise, are intended primarily to apply to buildings where congregations come

together in a public forum for religious services. See, e.g., In re Walker, 200 Ill. 566 (66 NE 144); Masonic Building Assn. v. Town of Stamford, 119 Conn. 53 (174 A 301); Town of Woodstock v. The Retreat, 125 Conn. 52, 3 A2d 232 (1938); Evangelical Baptist &c. Society v. City of Boston, 204 Mass. 28 (90 NE 572); People v. Collison, 6 N.Y.S. 711; City of Philadelphia v. Overbrook Park Congregation, 171 Pa. Super. 581 (91 A2d 310); Laymen's Week-End Retreat League v. Butler, 83 Pa. Super. 1; Whelon v. United States, 191 FSupp. 945 (Cust. Ct. 1961).

We conclude that the property of the Macon Baptist Association, Inc., here involved is not being used primarily as a place of religious worship within the meaning of the Georgia Constitution and statute authorizing the exemption of the property from ad valorem taxation. In summary, this conclusion is based primarily upon the finding that the property is not open as a public place of worship where a congregation gathers to practice the rites and ceremonies of its doctrinal theology, and to receive the sacraments of the church.

III.

The appellee also argues in this case that if taxation of the Association's building is required this will work a favoritism by the state toward 'those religious groups whose theologies do not require the kind of activity carried on by the Association as an essential part of the Baptist faith. The appellee asserts that this would violate the constitutional requirement that the state must remain neutral in its attitude toward religion under the First Amendment to the United States Constitution. See Engel v. Vitale, 370 U. S. 421 (82 SC 1261, 8 LE2d 601, 86 ALR2d 1285); Abington School District v. Schempp, 374 U. S. 203 (83 SC 1560, 10 LE2d 844); and Sherbert v. Verner, 374 U. S. 398 (83 SC 1790, 10 LE2d 965).

Religious groups do not enjoy a general immunity from the imposition of property taxes under the First Amendment to the United States Constitution. See Watchtower &c. Soc. v. Los Angeles County, 30 Cal. 2d 426 (182 P2d 178), cert. den. 332 U. S. 811. Cf. Walz v. Tax Comm. of New York, 397 U. S. 664 (90 SC 1409, 25 LE2d 697). Appellee's argument is essentially one which focuses on whether the denial of a religious tax

exemption to it would be discriminatory. It is sufficient to note in answer to this contention that there is no evidence in the record before us that the taxing authorities are discriminating against the appellee Association as opposed to other members of the class of religious associations similarly situated and subject to ad valorem taxation. The missionary work and the administration and coordination of those activities essential to appellee's religious beliefs and practices are not uncommon to other religious groups. The property of other religious groups, when used primarily for purposes similar to the use made by the appellee of its property here involved, would also be subject to ad valorem taxation. Thus, we cannot agree that the tax sought to be imposed on appellee in this case is discriminatory or otherwise violative of the First Amendment to the Constitution of the United States.

The trial court erred in granting summary judgment in favor of the appellee and in denying summary judgment in favor of the appellants.

*Judgment reversed; remanded with direction. All the Justices concur.*

ARGUED JANUARY 14, 1974 — DECIDED APRIL 4, 1974.

*Arthur K. Bolton, Attorney General, Richard L. Chambers, H. Perry Michael, Assistant Attorneys General, Sell, Comer & Popper, E. S. Sell, Jr.,* for appellants.
*Mincey & Kenmore, David L. Mincey, Sylvia G. Haywood, David L. Mincey, Jr.,* for appellee.