**E. E. SWEARINGEN et al., Trustees of the Baptist Sunday School Committee of the American Baptist Association, Appellants,**

v.

**CITY OF TEXARKANA, Texas, et al., Appellees.**

No. 8746.

Court of Civil Appeals of Texas, Texarkana.

Dec. 20, 1979.

Rehearing Denied Feb. 26, 1980.

Raymond D. Anderson, Jack Carter, Keeney, Anderson, Oliver, Carter & James, Inc., Texarkana, for appellants.

Robert M. Huey, McCreary & Huey, Austin, for Bowie County & State.

Paul Higgins, City Atty., Gregory S. Torrance, Asst. County Atty., Texarkana, for City of Texarkana.

Burton H. Patterson, Patterson, Sargent & Glanville, El Paso, for amicus curiae Baptist Spanish Publishing House of the Foreign Mission Bd. of the Southern Baptist Convention.

CORNELIUS, Chief Justice.

The single question to be decided in this appeal is whether property owned by the American Baptist Association and operated as a bookstore and publishing house is exempt from ad valorem taxes under Article VIII of the Texas Constitution and statutes enacted by the legislature pursuant thereto.

Texas Constitution, Article VIII, § 2 provides in part that:

"Sec. 2.(a) All occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax; but the legislature may, by general laws, exempt from taxation . . . *actual places of religious worship*, . . . and all laws exempting property from taxation other than the property mentioned in this Section shall be null and void." (Emphasis supplied.)

In 1907, the Texas Legislature exercised the authority granted to it by the constitution by enacting Article 7150, Tex.Rev.Civ. Stat., which provided that, among other property, "actual places of religious worship" would be exempt from taxation. In 1931, Article 7150 was amended to include property used by a church or a strictly religious society for the exclusive use as a dwelling place for the ministers of such church or society. In 1967, apparently in response to the decision in *Radio Bible Hour, Inc. v. Hurst-Euless Independent School District*, 341 S.W.2d 467 (Tex.Civ. App. Fort Worth 1960, writ ref'd n. r. e.), which had held that a building used to prepare, record and broadcast a weekly religious service by radio did not qualify as an actual place of religious worship, the legislature further amended Article 7150 by adding the following language:

"1(a). The term 'actual places of religious worship' shall include property owned by a church or by a strictly religious institution or organization, . . . used exclusively to support and serve the spread of a religious faith, and to effect accompanying religious, charitable, benevolent and educational purposes by the dissemination of information on a religious faith through radio, television and similar media of communication. . . ."

The property in question is located in Texarkana, Texas, and consists of a 41,280 square foot building and appurtenant driveways and parking areas located on 4.863 acres of land. The building is not connected or adjacent to a church building. The facility is operated by the Baptist Sunday School Committee, an auxiliary agency of

the American Baptist Association created for the purpose of aiding members and non-members in worship, declaring bible truths and evangelizing non-christians. The major portion of the building is used as a work space for the writing, editing, printing and distributing of sunday school literature and religious pamphlets, books and other materials. Also included in this portion of the building are various offices for sunday school committee personnel. In addition, the building contains a small chapel where the employees gather for a short devotional and prayer time each morning. Approximately eight percent (8%) of the structure is used as a sales area where bibles, books, sheet music, posters, stationery, pens and pencils and other miscellaneous material are sold to the general public at retail prices. The religious materials which are prepared at the building are made available, at cost or less, only to organized churches affiliated with the American Baptist Association for use in their evangelical and educational programs, except for some gospel tracts which are distributed free to third parties. All of the income received from sales of books and other materials is channeled back into the operation of the facility to reduce the cost of the material furnished to the churches and others. The grounds surrounding the building are used for parking, driveways, loading, unloading, drainage and light and air, all in relation to the building and necessary for its proper use and enjoyment.

The American Baptist Association applied to the county and city for exemptions from ad valorem taxes on the ground that the property came within the definition of an actual place of religious worship as contained in the amended Article 7150. The taxing units denied the exemption and brought separate suits, later consolidated into this one, to collect the taxes which they contended were due. After a non-jury trial upon stipulated facts, the trial court rendered judgment for the taxing authorities for the unpaid taxes, penalty and interest, and the American Baptist Association has perfected this appeal.

■ Statutes for the exemption of property from taxation are to be strictly construed against the exemption and in favor of taxation. An exemption may not be raised by implication, but the intention to relieve from taxation must affirmatively appear, and all reasonable doubts as to the interpretation of a statute providing an exemption must be resolved in favor of the right to tax. *Davies v. Meyer,* 541 S.W.2d 827 (Tex.1976); *River Oakes Garden Club v. City of Houston,* 370 S.W.2d 851 (Tex.1963); *Daughters of St. Paul, Inc. v. City of San Antonio,* 387 S.W.2d 709 (Tex.Civ.App. San Antonio 1965, writ ref'd n. r. e.); *Radio Bible Hour, Inc. v. Hurst-Euless Independent School District,* supra.

The constitution authorized the legislature to exempt "actual places of religious worship", but it made no attempt to define that term. The first legislative enactment implementing the constitutional provision likewise made no attempt to define the term. Lacking any constitutional or statutory definitions, our Supreme Court had the responsibility to define the term and it did so in *Davies v. Meyer,* supra, by quoting the following definition it had previously given in a different context:

> "As used in the Constitution the phrase 'place of worship' specifically means a place where a number of persons meet together for the purpose of worshipping God. . . ."

*Church v. Bullock,* 104 Tex. 1, 109 S.W. 115 (1908).

The court also quoted the following definition for worship, although recognizing that it probably was inadequate to embrace all of what is meant by the word:

> "Act of paying divine honors to a deity; religious reverence and homage. Adoration or reverence paid to God, a being viewed as God, or something held sacred from a reputed connection with God."

Although we recognize that the preparation and dissemination of religious materials for the purposes of inspiration, education and evangelization can be considered as worship in the larger meaning of the word, most courts which have dealt with the prob-

lem of tax exemptions for places of worship have construed and applied the term in the sense of a place where persons come together for congregational worship and for the administration or observance of church sacraments and ordinances. *Leggett v. Macon Baptist Association, Inc.*, 232 Ga. 27, 205 S.E.2d 197 (1974); *Laymen's Week-End Retreat League v. Butler*, 83 Pa.Super. 1 (1924); Annot., 17 A.L.R. 1032; Annot., 163 A.L.R. 1223, 1236. Implicit in such a view is the truth that there is a vast difference between property used for religious purposes and property used as an actual place of religious worship. The constitution does not permit the exemption of the former, but only the latter type of property. For example, in *City of San Antonio v. Young Men's Christian Association*, 285 S.W. 844 (Tex.Civ.App. San Antonio 1926, writ ref'd), the court held that a building admittedly used exclusively for the purpose of *furthering religious work* but not used as an *actual place of worship* was not exempt under the constitution, and that the legislature was powerless to exempt it by statute.

▄▄▄ Perhaps in recognition that the traditional view of a place of religious worship as applied in *Radio Bible Hour, Inc. v. Hurst-Euless Independent School District*, supra, might be too restrictive in this age of advanced and innovative methods of communication, the legislature provided in the 1967 amendment that actual places of religious worship would include facilities used exclusively to support and serve the spread of a religious faith by the dissemination of information on such faith by means of radio, television and similar media of communications.[1] Our task, then, is to determine first, whether the facility involved here comes within the statutory definition of actual places of religious worship as contained in the amendment to Article 7150 and second, if it does come within such amended definition, whether the legislature acted within its constitutional authority in defining such a place as an actual place of religious worship.

▄▄▄ Our answer to the first inquiry does not turn upon whether the press and its related activities constitute a "similar" medium of communication to radio and television. Conceding for the purpose of argument that the preparation and distribution of printed materials can qualify as a similar medium of communication to radio and television, that fact alone would not be sufficient to bring the property within the statute. If that were the test, then virtually any publishing house preparing and distributing religious materials would qualify for exemption from ad valorem taxation—a result which would be inconsistent with the rule of narrow construction of tax exemptions and with the apparent intention of the constitutional framers. As we interpret the statute, the legislature was not attempting to expand the constitutional exemption to include property other than actual places of religious worship, but was only recognizing a new method of worship—devotional or evangelical services disseminated to an audience through electronic or similar means. The legislature determined that under proper circumstances a facility used to transmit such services can qualify as a place of religious worship. The true test is whether the facility *serves the same function* as does a traditional place of religious worship. If printed or other types of media activities can reasonably be construed as performing that function and thus qualify as similar new methods of worship, then the facilities from which they emanate could conceivably also be entitled to the exemption. We simply conclude that, on the stipulated facts here, the activities conducted at the American Baptist Association book store and publishing house cannot be so construed. Assuredly, the property is a vital and necessary facility of the association devoted to religious purposes, but that is not sufficient to bring it within the exemption.

---

1. When given the power to implement constitutional provisions, the legislature may define terms which are not defined in the constitution itself, provided its definitions constitute reasonable interpretations of the constitutional language and do not do violence to the plain meaning and intent of the constitutional framers. See *San Antonio Conservation Society, Inc. v. City of San Antonio*, 455 S.W.2d 743 (Tex.1970).

In view of our conclusion that the property involved here is not an actual place of religious worship as contemplated by the constitution or the statute, we do not reach the constitutional question of whether the enactment of the amendment was beyond the power of the legislature.

The judgment of the trial court is affirmed.

HUTCHINSON, J., not participating.

## ON MOTION FOR REHEARING

In their motion for rehearing, appellants ably and earnestly argue that their bookstore and publishing house meets every criterion of the statute and is therefore entitled to the exemption. Nevertheless, upon careful reconsideration, we are convinced that our original disposition was correct.

While the ABA facility might fit the literal language of Article 7150(1)(a) (Supp.1979), we must presume that in enacting that statute the legislature intended to act within its constitutional authority, and to do so it could only have intended to exempt those facilities *which function as places of worship* by disseminating information on a religious faith, not those which merely disseminate religious information; otherwise, the statute would be unconstitutional. We are required to construe a statute in a manner which renders it constitutional if it is possible to do so consistent with a reasonable interpretation of its language, considering the old law, the evil sought to be remedied, and the remedy. We so construe the statute here by concluding that the intent of the legislature was not to extend the exemption to property other than places of worship, but to recognize that certain facilities for the spread of religious information can actually constitute places of religious worship because of the unique nature of the activities they perform. That it was not the public policy to extend the exemption to facilities which only prepare and distribute religious information or materials is confirmed, we think, by the language of the recently enacted Property Tax Code which, effective January 1, 1980, repeals Article 7150 in its entirety. The new Code provides that real property of a religious organization will be exempt only if it is used primarily as a place of regular religious worship, and is reasonably necessary for engaging in religious worship. It then defines religious worship only as "individual or group ceremony or meditation, education, and fellowship, the purpose of which is to manifest or develop reverence, homage, and commitment in behalf of a religious faith." Again recognizing that the ABA facility is devoted to religious work or the fulfilling of religious purposes, we conclude that it is not an actual place of religious worship as contemplated either by the constitution or by the statute.

Appellants' motion for rehearing is therefore overruled.

HUTCHINSON, J., not participating.