**CITY OF HOUSTON et al., Appellants,**

**v.**

**SOUTH PARK BAPTIST CHURCH OF HOUSTON, Appellee.**

**No. 14601.**

Court of Civil Appeals of Texas.

Houston.

July 8, 1965.

Rehearing Denied Sept. 9, 1965.

John Wildenthal, Jr., City Atty., Homer T. Bouldin, Trial Supervisor, Houston, for appellants.

Dougal C. Pope, Houston, for appellee.

BELL, Chief Justice.

The City of Houston and Houston Independent School District assessed taxes against appellee for the years 1962 and 1963 on Lot 25, Block 4, South Park Addition, Section 2. Appellee filed suit against appellants asking for a declaratory judgment as to whether the property was exempted from taxation under Article 7150 Vernon's Ann.Tex.Civ.St., it being property owned by the church which was used exclusively as a dwelling place by its "Education Minister." The petition also sought a cancellation of the alleged tax lien. The trial court sustained appellee's motion for summary judgment and rendered judgment that the assessment was void, cancelling the lien and declaring the property was exempted from taxation so long as it continued to be used as a parsonage for one of its ministers by appellee.

From the motion for summary judgment, its supporting affidavit and appellee's petition we find it undisputedly established that appellee owns title to the property in question and that it is used exclusively as a place of residence by its minister of education. We further find that appellee also owns title to an entirely separate piece of property on which is located a residence that is used exclusively by its pastor as a dwelling place. This tract is recognized by appellants as being exempted and no assessment has been made against it. The two tracts of land on which the dwelling places are situated aggregate in area less than one-half an acre of land. Neither tract contains more area than is reasonably necessary for the dwelling located thereon. Neither yields any revenue to the appellee. Appellee followed the procedure prescribed by statute to obtain the exemption if the property is the subject of an exempted status.

We have reached the conclusion that the trial court was in error in holding the property to be exempted.

Under Article VIII, Section 1 of the Constitution of Texas Vernon's Ann. St. it is in substance provided, with a few exceptions not necessary to notice, that all property in the State, whether owned by natural persons or corporations, shall be taxed in proportion to its value. The philosophy therein expressed is that it is but

just and equitable that the property of all persons should bear the burdens of government equally. This has led to the well established rule in Texas and in most other jurisdictions that provisions of law purporting to grant exemptions from taxation will be given a strict and narrow construction and exempted status will not be extended to property unless the controlling law clearly shows such was intended. River Oaks Garden Club v. City of Houston, 370 S.W.2d 851 (S.Ct.); Radio Bible Hour, Inc. v. Hurst-Euless Independent School District, 341 S.W.2d 467 (Tex.Civ.App.), ref., n.r.e.

Article VIII, Section 2 of the Constitution is the organic law of our State authorizing the Legislature to extend exempted status to specified property of churches or religious societies. Prior to 1928 this Article and Section provided that the Legislature might exempt "actual places of religious worship." It was held in the case of Trinity Methodist Episcopal Church v. City of San Antonio, 201 S.W. 669 (Tex.Civ.App.), writ ref., that this did not exempt the residence belonging to the church and used by its pastor as a home. In 1928 the people adopted Article VIII, Sec. 2 in its present form. Insofar as material here it provides as follows:

"* * *; but the legislature may, by general laws, exempt from taxation * * actual places of religious worship, also any property owned by a church or by a strictly religious society for the exclusive use as a dwelling place for the ministry of such church or religious society, and which yields no revenue whatever to such church or religious society; provided that such exemption shall not extend to more property than is reasonably necessary for a dwelling place and in no event more than one acre of land; * * * and all laws exempting property from taxation other than the property above mentioned shall be null and void."

We hold that this constitutional provision authorizes the Legislature to exempt only one dwelling place for the ministry of the church.

If the phrase "any property owned by a church or by a strictly religious society for the exclusive use as a dwelling place for the ministry of such church or religious society" stood alone, it might be interpreted to be purely descriptive of the character of use that must be made of the property and not a statement of the number of such places that could be held. This is particularly true since the word ministry is a term meaning "ministers of religion, collectively; the clergy." Yet it is also subject to the interpretation that only one dwelling place was intended though it could afford housing for more than one minister assigned to or employed as a minister by the church. When we consider all of the material parts of the section, however, we think it was intended to exempt only one dwelling place. Following the phrase above quoted we find this proviso: "* * * such exemption * * * shall not extend to more property than is reasonably necessary for a dwelling place and in no event more than one acre of land." The term "a dwelling place" as used in this proviso can in reason be but interpreted to mean one dwelling place. The limitation as to acreage cannot be reasonably interpreted to mean there may be more than one dwelling place so long as they together do not occupy more than one acre because the section also provides the exemption "shall not extend to more property than is reasonably necessary for a dwelling place." This means the dwelling place site may be no larger than is reasonably necessary to accommodate the dwelling furnished, but in no event shall it exceed one acre of land. It is noted the singular "a dwelling place" is here used. There are churches that have more than one member of the clergy administering the sacraments, ordinances and rites of the particular church that furnish a multiple occupancy dwelling for them. This might require a larger site. Too, in rural areas much larger land areas frequently attach to the actual dwelling place

to be used in a manner customary for rural homes, such, for example, a garden or orchard, or a few domestic animals for family use. Too, while the term "ministry" refers to the body of the clergy collectively, the general term was used instead of the specific designation of pastor, minister, priest, parson, etc., because the Legislature was trying to take care of every church and religious society, and different churches and religious societies use different designations for the clergy. By the use of the term "ministry", the exemption would thus be understood to extend to a dwelling place for the members of the clergy of a particular church whatever title or designation the particular church used.

Article 7150 provides for the exemption of any property owned by the church or religious society "for the exclusive use as a dwelling place for the ministers * *; provided that such exemption as to the dwelling place for the ministers shall not extend to more property than is reasonably necessary for a dwelling place * * *." This is substantially the same language as in the Constitution and differs only in the use of the plural term "ministers" instead of the collective term "ministry," but it is significant that it uses, as does the Constitution, the terms "a dwelling place" and at one point "the dwelling" place. Nowhere does it use the plural "dwelling places" or its equivalent.

Article 7150b is also relied on in its brief by appellee. It provides nothing different from the Constitution and Article 7150 except to provide the use of the dwelling place by the minister of a portion of the dwelling as his study, library or office shall not prevent the property from being considered as being used exclusively as a dwelling place. It also defines "ministry of such church" to include those persons whose principal occupation is in serving in the clergy, ministry, priesthood or presbytery of an organized religion whether assigned to a local church parish, synagogue, cathedral or temple or some larger unit of the church organization and whether they perform administrative functions or not.

■ There is nothing in this Article at variance with our construction of the Constitution and Article 7150.

If there were any variance between the statutes and Article VIII, Sec. 2 of the Constitution, the latter would control. While the Constitution gives authority to the Legislature to provide for exemptions, it defines the limits beyond which the Legislature may not go. Dickison v. Woodmen of the World Life Insurance Company, 280 S.W.2d 315 (Tex.Civ.App.), writ ref.

It is argued that the term "any property" when considered with the other provisions leads to the conclusion that more than one dwelling place is exempted. We do not agree. This term, we think, is used to mean wherever it is located, that is, whether as a part of the premises used for religious worship or wholly away from it. We are lead to this conclusion when we consider that in many places the clergy's residence was on the premises used also for religious worship, but some of them were elsewhere. Too, as above stated, some denominations had a dwelling designed for multiple occupancy. Here the Legislature wanted to make certain no matter where the dwelling was located and no matter whether it was for multiple occupancy, it would be exempted if occupied exclusively as a residence by the ministry of the church.

■ Applying the strict rule of construction, as we must, we hold the property involved was not exempted.

We do not reach the question as to whether the "Educational Minister" comes within the term "ministry" within the meaning of the Constitution.

The judgment of the trial court is reversed and the cause is remanded. We do not render judgment because appellants filed no motion for summary judgment.

Reversed and remanded.