**Charles G. DAVIS, Assessor-Collector of Taxes of Bexar County, Texas, Appellant.**

v.

**CONGREGATION AGUDAS ACHIM, Appellee.**

**No. 14827.**

Court of Civil Appeals of Texas, San Antonio.

June 24, 1970.

---

James E. Barlow, R. Emmett Cater, Donald H. Smith, San Antonio, for appellant.

Levey & Goldstein, Jay Sam Levey, San Antonio, for appellee.

CADENA, Justice.

Defendant, Charles G. Davis, Assessor and Collector of Taxes of Bexar County, complains of the rendition of a summary judgment declaring that property owned by plaintiff, Congregation Agudas Achim, is exempt from taxation as an actual place of religious worship.

The summary judgment record discloses that the property in question, which is the site of a synagogue, is primarily used as an actual place of religious worship. However, defendant insists that the property is not entitled to exempt status because on occasion, not exceeding one night a week, a portion of the building is rented to civic organizations, schools and other churches. From these rentals plaintiff realizes an income of about $10,000.00 a year. All of this money is used exclusively to help defray the cost of maintaining the building, and is actually sufficient to pay about one-half the cost of maintenance of the portion which is rented.

Prior to 1928, the pertinent portion of Article 8, Sec. 2 of the state constitution, Vernon's Ann.St. authorized the legislature to exempt from taxation "actual places of religious worship; * * *." This constitutional provision contained no language limiting the power to exempt from taxation to places of religious worship which were used exclusively for the purpose of worship and which yielded no revenue.

In 1928 the voters of this state approved a constitutional amendment which replaced the semi-colon after the word "worship" with a comma and added language authorizing the exemption of parsonages. In its present form, the relevant constitutional provision authorizes the legislature to grant exemption to

actual places of religious worship, also any property owned by a church or by a strictly religious society for the exclusive use as a dwelling place for the ministry of such church or religious society, and which yields no revenue whatever; * * *.

Even after the 1928 amendment, the constitution does not require that, in order to authorize a grant of legislative exemption from taxation, an actual place of religious worship be used exclusively for the purpose of worship and that it yield no revenue. The language requiring that exempted property be held exclusively for the exempted use is applicable only to the grant of authority to exempt "the dwelling place for the ministry" of a church or religious society. From the viewpoint of syntax, the language excluding revenue-producing property from exemption is applicable only to parsonages. This is apparent not only from the juxtaposition of the words, but also from the fact that the constitutional language speaks of property which "yields" no revenue. The use of the singular form of the predicate requires a singular subject, and this requirement can be satisfied only if the singular verb is made referable only to property used as a parsonage. If the restriction to property which produces no revenue were intended to be applicable not only to the dwelling place of the ministry but also to actual places of public worship, the limiting clause would have to use the plural form of the verb.[1]

Insofar as here relevant, the legislative exercise of the power to grant exemptions

---

1. Without suggesting that the requirement that a "bill" contain only one subject, which shall be expressed in the title (Article 3, Sec. 35 of the state constitution) is applicable to joint resolutions, it might be pointed out that H.J.R. 20 of the 40th Legislature, which embodied the proposed amendment, according to its caption, proposes the submission of an amendment "to authorize the Legislature to exempt from taxation any property owned by a church or by a strictly religious society for the exclusive use as a dwelling place for the ministry of such church or religious society and which yields no revenue whatever to such church or religious society." Acts 1927, 40th Leg. p. 466.

from taxation is found in Section 1 of Article 7150, Tex.Rev.Civ.Stat.Ann., which grants exemption from taxation to "public school houses" and

> actual places of religious worship, also any property owned by a church or by a strictly religious society, for the exclusive use as a dwelling place for the ministers of such church or religious society, the books and furniture therein and the grounds attached to such buildings necessary for the proper occupancy, use and enjoyment of the same, and which yields no revenue whatever to such ·church or religious society; * *.

■ Once again, the requirement of exclusive devotion of the property to the specified use is applicable only to parsonages. Again, too, the use of "yields" in the clause which excludes revenue-producing property from exemption requires that we search for a singular subject. The most painstaking study of the language leads to the discovery of only one possible singular subject, that is, "any property owned by a church or by a strictly religious society, for the exclusive use as a dwelling place for the ministers of such church or religious society." Even if we ignore all the language referring to parsonages, we would have the highly ungrammatical "actual places of public worship * * * which yields no revenue whatever to such church or religious society." In addition, the words "such church or religious society" presuppose a prior reference to churches and religious societies. The only previous reference to "church or religious society" is in connection with property owned by a church or religious

society for use as a dwelling place for the ministry.

If the legislature intended to deny to revenue-producing properties exempt status as actual places of public worship, it certainly would have given expression to such intention in a less inept and ungrammatical manner.

Even if we assume that the rule requiring "strict" construction of tax exemption statutes is still applicable in Texas,[2] this doctrine does not require that judges, in interpreting statutes, proceed on the assumption that the legislative branch of our government is in the hands of semi-illiterates.

Defendant calls our attention to Radio Bible Hour, Inc. v. Hurst-Euless I. S. D., 341 S.W.2d 467, 469 (Tex.Civ.App.—Fort Worth 1960, writ ref'd ·n. r. e.), where is was said that part of the holding in City of San Antonio v. Young Men's Christian Association, 285 S.W. 844 (Tex. Civ.App.—San Antonio 1926, writ ref'd), was that a building must be "exclusively used for religious worship (as distinguished from religious work)" in order to be tax exempt. The actual holding in Radio Bible Hour was to the effect that property used primarily for the purpose of preparing, recording and disseminating religious programs was not "an actual place of religious worship."[3] The case did not involve a situation where, as here, the primary use of the property was as an actual place of religious worship.

Neither the Y.M.C.A. case, nor the cases cited by this Court in that opinion support the statement that only property used "exclusively" as an actual place of religious

---

2. The two most recent expressions by our Supreme Court concerning exemptions from taxation make no reference to the "strict construction" rule. See San Antonio Conservation Society, Inc. v. City of San Antonio, Tex., 455 S.W.2d 743. (May 27, 1970), and McCreless v. City of San Antonio, 454 S.W.2d 393 (May 20, 1970).

3. In an apparent attempt to nullify the holding in Radio Bible Hour, the legislature added Sec. 1(a) to Article 7150. This new Section states that the term "actual places of religious worship" shall include property owned by a church or a strictly religious society and used exclusively to support and serve the spread of a religious faith by the dissemination of information through radio or television.

worship may be entitled to tax exemption. It is clear from the opinion of Justice Cobbs that the Y.M.C.A. disclaimed use of the property as an actual place of religious worship.

Further, the statement in the Y.M.C.A. case that only property used "exclusively" as an actual place of religious worship may enjoy tax-exempt status is based on the language of Article 7150 as it existed in 1926. Until 1931, Sec. 1 of Article 7150 granted tax exemption only to property "used exclusively" as a place of worship. Tex.Rev.Civ.Stat. (1925) Article 7150, Sec. 1.

In Y.M.C.A. this Court supported its statement that only property used "exclusively" as a place of worship was exempt by citing City of Dallas v. Cochran, 166 S.W. 32 (Tex.Civ.App.—Texarkana 1914, writ ref'd); City of San Antonio v. Seeley, 57 S.W. 688 (Tex.Civ.App.—San Antonio 1900, no writ); and Edmonds v. City of San Antonio, 14 Tex.Civ.App. 155, 36 S.W. 495 (San Antonio 1896, writ ref'd). Seeley and Edmonds involved exemptions claimed by privately owned schools. In this connection, it should be noted that while Article 8, Sec. 2 of the constitution authorizes the legislature to exempt public property used for public purposes, the exemption of privately owned property used for school purposes is authorized only where the property is used exclusively for school purposes. Insofar as Cochran stands for the proposition that exempt status depends on the use of the property exclusively as a place of religious worship, such holding was compelled by the wording of the statute then in force.

Defendant next points to the cases involving charitable organizations. These cases uniformly embrace the doctrine that only property used "exclusively" by charitable institutions may be exempted from taxation. Morris v. Lone Star Chapter No. 6, R.A.M., 68 Tex. 698, 5 S.W. 519 (1887), held that partial use of the property by a nonowner for any purpose destroys the exemption if the nonowner pays rent. City of Houston v. Scottish Rite Benevolent Association, 111 Tex. 191, 230 S.W. 978 (1921), stands for the proposition that the exemption is destroyed if a nonowner uses the property for noncharitable purposes even if no rent is paid. Although it has been said that partial use by persons other than the charitable organization destroys the exemption "whether the others pay rent or not," City of Longview v. Markham-McRee Memorial Hospital, 137 Tex. 178, 152 S.W.2d 1112, 1113 (1941), there seems to be no direct holding that free use by a nonowner whose purposes are charitable will destroy the exemption.

In the charitable organization cases, the insistence on exclusive use by the charity flows from an interpretation of the applicable constitutional provision. Thus, in Santa Rosa Infirmary v. City of San Antonio, 259 S.W. 926 (Tex.Comm.App., 1924, opinion adopted), the *Morris* and *Scottish Rite* cases were explained as follows:

> But, as the Constitution requires the property, as a prerequisite to its right to exemption, to be exclusively used by the charitable institution, it is apparent, if any part of it is rented out and the relation of landlord and tenant created, that very fact would necessarily destroy the exclusive use necessary to be retained by the owner to bring its property within the plain terms of the Constitution, and it has been therefore held * * * that the leasing of all or any part of a charitable institution's property to those not themselves engaged in a wholly charitable work, or the occupancy of even a part of the property by others under what amounts to an equivalent situation * * *, destroys the exempt character of the property, and it is plain that in those cases there could have been no other holding. (259 S.W. at 931–932).

The constitutional basis for the holdings in the cases involving charitable institutions is also made clear in Markham-McRee, where it is said, "The constitutional requirement is two-fold; the property must be owned by the organization claiming the exemption; it must be exclusively used by the organization, as distinguished from a partial use by it, and a partial use by others, * * *." 152 S.W.2d at 1113.

As originally adopted in 1876, Article 8, Sec. 2 of the constitution authorized the exemption of "all buildings used exclusively and owned by persons or associations of persons for school purposes (and the necessary furniture of all schools), and institutions of purely public charity; * * *." It was this original form of the provision which the Supreme Court had before it in the Morris case (5 S.W. at 520). It is clear that the Court in Morris read the constitutional grant of power to exempt charities as authorizing exemption of "all buildings used exclusively and owned by * * * institutions of purely public charity."

By constitutional amendment adopted in 1906, the provision in question was changed to authorize exemption of

all buildings used exclusively and owned by persons or associations of persons for school purposes and the necessary furniture of all schools; also the endowment funds of such institutions of learning and religion not used with a view to profit and when the same are invested in bonds or mortgages, or in land or other property which has been and shall hereafter be bought in by such institutions under foreclosure sales made to satisfy or protect such bonds or mortgages; that such exemption of such land and property shall continue only for two

years after the purchase of the same at such sale by such institutions and no longer, and institutions of purely public charity; * * *.

The addition of the language relating to endowment funds and land purchased in order to protect funds invested in bonds and mortgages certainly did not have the effect of clarifying the provision,[4] and the use of the word "religion" in the phrase "funds of such institutions of learning and religion" merely adds to the confusion. However, despite the increase in verbal distance between "all buildings used exclusively and owned by" and "institutions of purely public charity," the Supreme Court held that the limiting words "used exclusively and owned by" were still applicable to "institutions of purely public charity." City of Houston v. Scottish Rite Benevolent Association, supra, 230 S.W. at p. 980.

The cases imposing the requirement of exclusive use by the charitable organization as a prerequisite to exemption of its property are based on an interpretation of the applicable constitutional provision which is reasonable, particularly if we consider the original wording of the applicable provision. No similar interpretation of the provisions applicable to actual places of religious worship is possible without doing violence to the constitutional language.

If it be conceded that only property used exclusively as an actual place of religious worship is entitled to exemption, then, under the holding in Santa Rosa Infirmary v. City of San Antonio, supra, the record here discloses a fulfillment of that requirement. In Santa Rosa, the hospital was used primarily by others who paid for the privilege of occupying

---

4. As a result of various amendments which took the form of inserting additional language designed to enlarge the legislative power, with no effort being made to simplify the section by redrafting, Article 8, Sec. 2 now consists of a remarkable sentence of almost three hundred words, with the seemingly impossible task of holding this amazing structure together being assigned to ten overworked commas and eight overburdened semi-colons.

hospital rooms. In addition, surgeons made use of the hospital facilities, including the operating rooms, for the purpose of carrying on their own non-charitable business for a profit. From this primary use by others, the charitable institution realized a profit which it used exclusively for the purpose of maintaining and improving the hospital. If there is such a thing as "judicial license" which permits speaking of degrees of "exclusiveness," then it can be said that the use of the synagogue here by the owner is at least as exclusive as was the use of the hospital by the charitable institution in Santa Rosa.

We do not consider that the holding in First Baptist Church v. City of Fort Worth, 17 S.W.2d 130 (Tex.Civ.App.—Amarillo 1929), affirmed, 26 S.W.2d 196 (Tex.Comm.App.1930), is in point. At the time of that decision, the applicable statute exempted only property "used exclusively for public worship." Secondly, there is nothing in the First Baptist Church opinion to indicate that there, as here, the portion leased to commercial firms was primarily, if at all, used as a place of worship.

Here, as in Santa Rosa, the property is not being "leased out in the ordinary sense." The only affidavit in the case recites, without contradiction even by defendant's pleadings, that plaintiff allowed use of a portion of the building by others as a "community service." Traditionally, houses of worship have been used as meeting places by the community at large for non-religious purposes.

■ Defendant's second and third points of error assert that the judgment below is against the overwhelming weight and preponderance of the evidence, and that no evidence was introduced in the trial court to support the judgment. Such assertions have no relevance in a summary judgment proceeding.

■ Next, defendant, while conceding that a trial court need not file findings of fact and conclusions of law in a summary judgment case, urges that such rule is not here applicable because defendant's cross-motion for summary judgment was based on the affidavit filed by plaintiff. We find no merit in this contention.

Finally, defendant contends that the trial court erred in granting plaintiff's motion for summary judgment because such ruling prevents defendant from taxing plaintiff in the future if the non-religious use of the premises increases substantially. This point is not briefed. The full "statement, argument and authorities" under this point in defendant's brief is as follows: "It is the Appellant's contention that Appellant's Point of Error Number Five is adequate upon its face and, hence, no further argument or authorities are necessary. Res ipsa loquitur."

■ Rule 418(c), Texas Rules of Civil Procedure, requires that appellant's brief contain a "brief of the argument" which should include "a fair, condensed statement of facts pertinent" to each point and "such discussion of the facts and authorities relied upon as may be requisite to maintain the point at issue." Appellant's brief does not call our attention to anything in the record to support his conclusion that the judgment below would preclude taxation of plaintiff's property if a change of facts should occur in the future. We do not consider defendant's fifth point. Appellate Procedure in Texas, Sec. 12.4(6), pp. 12–15 (1964).

■ Our holding is that where the primary and overwhelmingly preponderant use of the property is as an actual place of religious worship, the fact that the occasional use of the property for secular purposes produces income does not destroy the exemption at least where, as here, such income is devoted exclusively to the maintenance of the actual place of religious worship.

We realize the rules based on distinctions between primary and incidental uses

involve considerations of degree which, in any given case, may pose difficult problems. But the Courts have had no difficulty in considering and solving, at least to their own satisfaction, problems involving questions of degree.

The judgment of the trial court is affirmed.