A. Donald DAVIES, Petitioners,

v.

Milton MEYER et al., Respondents.

No. B–5687.

Supreme Court of Texas.

Sept. 29, 1976.

Rehearing Denied Nov. 3, 1976.

Golden, Potts, Boeckman & Wilson, Claude R. Wilson, Jr., and H. David Herndon, Dallas, Texas, for petitioners.

McCreary & Huey, Robert M. Huey, Austin, for respondents.

POPE, Justice.

The single question presented by this appeal is whether under the factual development of this case, a church camp is exempt from ad valorem taxation as an "actual place of religious worship," as that phrase is used in section 2, article VIII[1] of the Texas Constitution and sections 1,[2] 1a,[3] and 2a,[4] article 7150, Texas Revised Civil Statutes. A. Donald Davies, Bishop of the Episcopal Diocese of North Texas, filed this suit to obtain a declaratory judgment that Camp Crucis, a one hundred fifty-five acre church

---

1. Sec. 2. All occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax; but the legislature may, by general laws, exempt from taxation public property used for public purposes; actual places or [of] religious worship, also any property owned by a church or by a strictly religious society for the exclusive use as a dwelling place for the ministry of such church or religious society, and which yields no revenue whatever to such church or religious society; provided that such exemption shall not extend to more property than is reasonably necessary for a dwelling place and in no event more than one acre of land;

2. The following property shall be exempt from taxation, to-wit:

1. Schools and Churches—Public school houses and actual places of religious worship, also any property owned by a church or by a strictly religious society, for the exclusive use as a dwelling place for the ministers of such church or religious society, the books and furniture therein and the grounds attached to such buildings necessary for the proper occupancy, use and enjoyment of the same, and which yields no revenue whatever to such church or religious society; provided that such exemption as to the dwelling place for the ministers shall not extend to more property than is reasonably necessary for a dwelling place and in no event more than one acre of land.

3. 1(a). The term "actual places of religious worship" shall include property owned by a church or by a strictly religious institution or organization, including the personal property therein and the grounds attached to such buildings necessary for the proper use and enjoyment of same, used exclusively to support and serve the spread of a religious faith, and to effect accompanying religious, charitable, benevolent and educational purposes by the dissemination of information on a religious faith through radio, television and similar media of communication.

4. 2a. Religious, educational and physical development associations.—That all property owned or used exclusively and reasonably necessary, in conducting any association engaged in the joint and threefold religious, educational and physical development of boys and girls, young men and young women, operating under a State or National Organization of like character, and not leased or otherwise used with a view to profit other than for the purpose of maintaining the buildings and Association, and all endowment funds of the above mentioned religious institutions, not used with a view to profit but for the purpose of maintaining the Association and buildings in doing religious work and for the educational or physical development of boys and girls, young men and young women, shall be exempt from taxation; provided that land property received by said institutions in payment and satisfaction of endowment fund loans or investments shall be exempt for two years only after foreclosure purchase of said land, and no longer.

camp, was exempt from taxation. The trial court after a non-jury trial, rendered judgment that the open-air chapel and an acre surrounding it as well as the minister's residence with its surrounding acre of land were the only parts of the camp that were exempt. The basis for the judgment was that the plaintiff, who was charged with the burden of proof, failed to prove entitlement to an exemption to the remaining one hundred fifty-three acres. The court of civil appeals refused to hold that the evidence established as a matter of law that the entire tract was "an actual place of religious worship." 528 S.W.2d 864. We affirm the judgments of the courts below.

The trial judge filed findings of fact and conclusions of law at the conclusion of the trial. The findings and record show that the petitioner A. Donald Davies is the Bishop of the Episcopal Diocese of North Texas; and in that capacity he is the record title owner of Camp Crucis. The camp consists of about one hundred fifty-five acres in Hood County, part of which has been developed into living, dining, educational and recreational areas. It has an open air chapel where church services are held during the camp sessions. The recreational facilities include a large athletic field, a swimming pool, tennis, volleyball and basketball courts. For sixty days during the summer months, wholesome church camp programs for various age groups are conducted on the property. The summer program includes daily religious services, religious education, crafts and recreation. During other times of the year the camp is used as a meeting and recreational facility for church groups, for leadership training, women's retreats, couples retreats, clergy conferences, and for church picnics. Occasionally it is used by a local service club and a square-dance group. From a map introduced at the trial, it appears that approximately two-thirds of the acreage consists of natural vacant land.

The trial court's conclusions include one which states that the burden of proof rests upon the claimant for an exemption from ad valorem taxes, that the open-air chapel is an actual place of worship, the minister's residence is exempt and that the remaining one hundred fifty-three acres, after setting aside one acre around the two exempt places, are not exempt.

■ The court of civil appeals correctly held that claims for tax exemptions are strictly and narrowly construed. *Hilltop Village, Inc. v. Kerrville Ind. Sch. Dist.,* 426 S.W.2d 943 (Tex.1968); *River Oaks Garden Club v. City of Houston,* 370 S.W.2d 851 (Tex.1963); *City of Houston v. South Park Baptist Church,* 393 S.W.2d 354 (Tex.Civ. App.1965, writ ref'd); *City of Dallas v. Cochran,* 166 S.W. 32 (Tex.Civ.App.1914, writ ref'd). The court of civil appeals also correctly ruled that the area of an acre around and including the chapel and the minister's residence should be exempt. Our central question is whether the claimant proved as a matter of law that all one hundred fifty-five acres should be exempt.

■ What constitutes an actual place of religious worship as those words are used in the Constitution and statutes is a fact issue which the claimant has the burden to prove. In the case before us, the claimant failed to convince the fact finder that one hundred fifty-three acres of the camp were entitled to an exemption. We are unable to conclude that the entire camp from the undisputed evidence and as a matter of law should be exempt.

The term, worship, is defined in Webster's New International Dictionary, 2d ed., as:

Act of paying divine honors to a deity; religious reverence and homage. Adoration or reverence paid to God, a being viewed as God, or something held sacred from a reputed connection with God.

That definition, and perhaps any definition may be inadequate to embrace all of what is meant by the word, "worship." Certainly inspiration and a spirit or renewal may be captured by experiences with nature and the wilderness, but those experiences can also qualify as wholesome recreation which falls short of religious worship.

In a different context, but relevant to the definition of the constitutional and statuto-

ry phrase, this court wrote in *Church v. Bullock,* 104 Tex. 1, 109 S.W. 115 (1908):

> As used in the Constitution the phrase "place of worship" specifically means a place where a number of persons meet together for the purpose of worshiping God. *State v. Swink,* 20 N.C. 492. The Century Dictionary gives this definition: "A building or part of a building set apart for any purpose—as a place of worship." The worship of God is not prohibited in any place, but we are of the opinion that the spirit of the Constitution would include any place at which the worship might be indulged in so continuously and in such a manner as to give it the character of "a place of worship."

■ There is a difference between a place which is used for religious purposes and a place of actual worship. It was held in *Radio Bible Hour, Inc. v. Hurst-Euless Ind. Sch. Dist.,* 341 S.W.2d 467 (Tex.Civ. App.1960, writ ref'd n. r. e.) that the full time use of a building for the preparation of religious sermons, programs and the publication of a religious newspaper while religious in its purpose did not qualify the premises for exemption as a place of worship. A similar distinction was recognized in *City of San Antonio v. Young Men's Christian Association,* 285 S.W. 844 (Tex. Civ.App.1926, writ ref'd); *see also, In re Walker,* 200 Ill. 566, 66 N.E. 144, 147 (1902).

The Georgia case of *Leggett v. Macon Baptist Association, Inc.,* 232 Ga. 27, 205 S.E.2d 197 (1974), makes this distinction between religious uses and worship. The property that was the subject of that lawsuit was used as coordinating headquarters for forty-seven congregations which comprised the Macon Baptist Association. The property was used for administrative work, pastors' conferences, seminars and regular religious services. The fact that religious work was conducted on the premises was not sufficient to entitle the property to a tax exemption as a place of worship.

■ Bishop Davies testified that the basic objective for Camp Crucis was to furnish religious education to children, but he went on to explain that the camp serves as a facility to nurture children as well as adults in the faith through study and worship. The rector of the camp said that the camp program included teaching, catechetical teaching, and the creation of a religious atmosphere in which unity and fellowship in the faith are incorporated into all activities of the camp. Upon the basis of that and similar evidence, the trial court could reasonably conclude that Camp Crucis instead of being used as an actual place of religious worship was used as a place for religious education. While worship includes teaching and education; education, even religious education, does not necessarily include worship.

The distinction between religious worship and religious education is recognized in *Flathead Lake Methodist Camp v. Webb,* 144 Mont. 565, 399 P.2d 90 (1965). The Montana Constitution exempted property used "for education purposes, places of actual religious worship . . . ." The basis for the exemption of the twenty-two acre church camp was that the property was used for educational purposes. The exemption was not granted because the camp was a place for religious worship.

■■ It is not our holding that any program which is collateral to religious worship will defeat an exemption which would otherwise be allowed. Section 1 of article 7150 does not require that the place of worship be exclusively so used. *Davis v. Congregation Agudas Achim,* 456 S.W.2d 459 (Tex.Civ.App.1970, no writ). We only hold that the fact finder in this case was supported by evidence in the conclusion that the greater part of Camp Crucis was used for purposes other than religious worship. *See North Idaho Jurisdiction of Episcopal Churches, Inc. v. Kootenai County,* 94 Idaho 644, 496 P.2d 105 (1972).

Our petitioner Bishop Davies strongly relies upon the case of *Morning Cheer, Inc. v. Board of County Commissioners of Cecil County,* 194 Md. 441, 71 A.2d 255 (1950), in which an exemption from ad valorem taxes was allowed on thirty-five acres of land that was used for a religious retreat. The

Maryland statutory exemption extended not only to the "House and buildings used exclusively for public worship," but also to "the grounds appurtenant to such houses, buildings and parsonages and necessary for the respective uses thereof." Section 1, article 7150, is not so broad. The Maryland statute also differed from the Texas statute in that it expressly limited the exemption to forty acres. The court, however, allowed the exemption to only thirty-five acres of cleared lands near the buildings. There are other differences between the facts in *Morning Cheer* and this case. There is also the difference in the law of Texas with the limitation which the Texas Constitution and the Texas statute impose by the words "actual place" upon the phrase "of religious worship."

■ Section 1a of article 7150 does not entitle Camp Crucis to an exemption. That section is a non-exclusive expression of what the term "actual places of religious worship" includes. It has several requirements and then adds this as an additional one: "and to effect accompanying religious, charitable, benevolent and educational purposes by the dissemination of information on a religious faith through radio, television and similar media of communication." Camp Crucis is not used for that purpose. There has been no contention in the trial court or on appeal that Camp Crucis would be entitled to an exemption under the provisions of section 2a of article 7150, and we express no opinion concerning an exemption under that statute.

The judgments of the courts below are affirmed.