**HIGHLAND CHURCH OF CHRIST, Appellant,**

v.

**Leroy E. POWELL, Tax Assessor-Collector for the City of Abilene et al., Appellees.**

No. 5667.

Court of Appeals of Texas, Eastland.

Dec. 16, 1982.

Rehearing Denied Jan. 13, 1983.

Glenn E. Heatherly, Rhodes, Doscher & Heatherly, Abilene, for appellant.

Gary C. Landers, First Asst. City Atty., Aleta Hacker, Wagstaff, Harrell, Alvis, Stubbeman & Seamster, Abilene, Shelburne J. Veselka, McCreary & Huey, Austin, for appellees.

McCLOUD, Chief Justice.

The issue is whether or not a part of a building in which the Highland Church of Christ conducts the church's Herald of Truth Radio and Television Ministry is exempt from ad valorem taxation. The Highland Church of Christ, an unincorporated religious association, located in Abilene, Texas, filed suit seeking a declaratory judgment that its property was exempt from taxation for the years 1978, 1979 and 1980. Following a jury trial, judgment was entered in favor of Abilene Independent School District, West Central Texas Municipal Water District, City of Abilene, State of Texas and Taylor County against the church for delinquent taxes for the years 1978, 1979 and 1980. The church appeals. We affirm in part and reverse and render in part.[1]

The Herald of Truth Ministry was conceived and implemented by the Highland Church of Christ in 1952, and it operates under the oversight of the elders of the church. It exists to help in the spiritual development of English and Spanish speaking people by the use of radio, television and printed material. The weekly and daily programs are currently broadcast on about 200 radio stations. Radio programs are presented in the United States, Mexico, Spain, Brazil and Peru. Weekly programs are televised on approximately 84 television outlets. By the use of cable, VHF and UHF stations, the Herald of Truth is televised in over 2,500 cities in the United States. The Herald of Truth Radio and Television programs are carried over the Armed Forces Radio and Television Network. Two hundred military installations around the world carry the radio programs, and 93 military installations carry the television programs. Books, pamphlets, transcripts and magazines are distributed to people all over the world.

During its existence, the Herald of Truth Ministry has had several locations. In the early 1960's, the ministry was conducted in an old house owned by the church. In 1963, following a remodeling project, the ministry was moved into the main Highland Church building. In 1977, the Elders of the Highland Church decided that the Herald of Truth ministry would have to be moved because of overcrowding within the main church building. The church purchased an old building which was remodeled into two areas separated by a common wall. The south side of the building has been occupied exclusively since 1977 by the Highland Church for its Herald of Truth Radio and Television Ministry. The north side of the

---

1. This opinion was originally entered on December 17, 1981. The taxing authorities' motion for rehearing disclosed that the trial court's judgment had been fully paid by the church. We then withdrew this opinion and held that the cause was moot. The Supreme Court reversed our judgment, holding that the trial court's judgment was not "voluntarily" paid by the church and remanded the cause for disposition on the merits. See *Highland Church of Christ v. Powell*, 633 S.W.2d 324 (Tex.App.—Eastland 1982), *rev'd*, 640 S.W.2d 235 (1982). We now reinstate our original opinion.

building is leased out to commercial tenants. The common wall between the Herald of Truth facility and the commercial office area was designed and built without an interior passageway between the two. The building is located approximately two miles from the main church building. The activities presently conducted at the Herald of Truth facility are exactly the same activities as were conducted by the ministry when it was located in the main church building.

### 1980 TAX

Effective January 1, 1980, the Legislature enacted Section 11.20 of the Property Tax Code which provides in part:

(a) An organization that qualifies as a religious organization as provided by Subsection (c) of this section is entitled to an exemption from taxation of:

(1) the real property that is owned by the religious organization, is used primarily as a place of regular religious worship, and is reasonably necessary for engaging in religious worship;

\*　　\*　　\*　　\*　　\*　　\*

(e) For the purposes of this section, "religious worship" means individual or group ceremony or meditation, education, and fellowship, the purpose of which is to manifest or develop reverence, homage, and commitment in behalf of a religious faith.

The Highland Church of Christ is a "religious organization" as defined in Section 11.20. The controversy is whether or not the property used by the Herald of Truth Ministry is used "primarily as a place of regular religious worship."

In Special Issue 3, the jury found that during the year 1980 the Highland Church of Christ's Herald of Truth Radio and Television facility on S. Pioneer Drive was used primarily as a place of regular religious worship and was reasonably necessary for engaging in religious worship. "Religious worship" was defined by the court in accordance with paragraph (e) of Section 11.20 copied above. The jury found in Special Issue 4 that "35%" of the building located at 301–303 S. Pioneer Drive was used during the year 1980 by Highland Church of Christ primarily as a place of regular religious worship. The jury was directed in the issue to answer with a "percentage figure."

The trial court disregarded Special Issues 3 and 4 and entered judgment notwithstanding the verdict in favor of the taxing authorities for the year 1980.

■ The trial court was authorized to disregard the answers to Special Issues 3 and 4 only if they have no support in the evidence or if the issues are immaterial. We must consider only the evidence and the reasonable inferences therefrom which support the answers. *C & R Transport, Inc. v. Campbell,* 406 S.W.2d 191 (Tex.1966). First, we point out that the definition of "religious worship" contained in Section 11.20, paragraph (e) of the Property Tax Code, is a new statutory definition, and earlier cases interpreting the term "religious worship" are not controlling.

The testimony of Lester Fowler, the Highland Church of Christ elder who had immediate responsibility for the Herald of Truth Radio and Television Ministry, reflects that the evangelistic ministry is conducted to help in the spiritual development of those people around the world who hear the radio programs, view the television productions, or read the printed materials. The Elders of the Highland Church of Christ have sole control of the contents of the Herald of Truth programs. Fowler testified that the whole purpose of the ministry is to provide for the listening audience elements of meditation, education and fellowship, and to develop reverence, homage and commitment to their religious faith. He stated that the "creative phase" of the programs takes place at the building in issue. This is where the "thinking" portion of the programs occur. The actual performance by the speakers occur at other video or radio facilities. The Herald of Truth employs 40 full-time, and eight part-time employees, to produce and prepare the information.

Dr. Jack Ridlehoover, pastor of the Pioneer Drive Baptist Church in Abilene, testified that the Herald of Truth is a radio and television ministry which seeks to promote and disseminate the gospel. He stated that the church presents Bible teaching and evangelism to persons who might otherwise not be reached without this kind of ministry. It is an "extension of the missions, witnessing, evangelistic and gospel propagation ministry of the Highland Church of Christ." Dr. Ridlehoover stated that for those persons who view and hear the results of the work done by the Herald of Truth, there is "most surely meditation, worship, education, the propagation of the gospel." He added that the same could be true as to the persons who prepare the services. The pastor stated that he worships when he writes a sermon.

Our Supreme Court in *Davies v. Meyer*, 541 S.W.2d 827 (Tex.1976), when construing Tex.Rev.Civ.Stat.Ann. art. 7150, which was replaced and repealed by Section 11.20 of the Property Tax Code, said:

> What constitutes an actual place of religious worship as those words are used in the Constitution and statutes is a fact issue which the claimant has the burden to prove.

The court, after reviewing the evidence, held that the evidence failed to establish "as a matter of law" that the entire camp, which consisted of 155 acres, was "an actual place of religious worship." Unlike *Davies,* the jury in the instant case found that the property was used "primarily as a place of regular religious worship." The court in *Davies* carefully restricted its holding as follows:

> It is not our holding that any program which is collateral to religious worship will defeat an exemption which would otherwise be allowed. Section 1 of article 7150 does not require that the place of worship be exclusively so used. *Davis v. Congregation Agudas Achim,* 456 S.W.2d 459 (Tex.Civ.App.1970, no writ). We only hold that the fact finder in this case was supported by evidence in the conclusion that the greater part of Camp Crucis was

used for purposes other than religious worship.

We think the testimony of Lester Fowler and Dr. Ridlehoover is some evidence to support the jury's answer to Special Issue 3. The jury could reasonably infer that the members of the church staff, who prepare the material at the building in question, to be used in the radio and television ministry, participate in "individual or group ceremony or meditation, education, and fellowship, the purpose of which is to manifest or develop reverance, homage, and commitment in behalf of a religious faith."

The definition of "religious worship" which is now contained in paragraph (e) of Section 11.20 is broad in scope. Much of the language contained in earlier cases discussing the difference between "religious work" and "religious worship" is no longer significant. Those cases dealt with statutes containing no statutory definition of "religious worship," or a definition different from the definition presently contained in Section 11.20. See *Davies v. Meyer,* 541 S.W.2d 827 (Tex.1976); *Swearingen v. City of Texarkana,* 596 S.W.2d 157 (Tex.Civ.App. —Texarkana 1979, writ ref'd n.r.e.); *Radio Bible Hour, Inc. v. Hurst-Euless Independent School District,* 341 S.W.2d 467 (Tex. Civ.App.—Fort Worth 1960, writ ref'd n.r. e.). Also, in each of the above cited cases the fact finder found in favor of the taxing authority, and the appellant in each case had the difficult burden of setting aside the fact finding. Here, the fact finder found against the taxing authorities, and the Highland Church of Christ need only show that there is some evidence to support the special issues which the trial court disregarded.

R.A. Moreau, a Deputy Tax Assessor-Collector for the City of Abilene, inspected the building in question and determined that approximately 35% or 13,000 square feet was being used "exclusively" by the Highland Church for the Herald of Truth Ministry. This part of the building is completely separated from the remainder of the building which is rented by the church to tenants for commercial purposes. The

church does not contend that the entire building is exempt from taxation. It argues that only the portion used exclusively by the Herald of Truth Ministry is exempt. In *Davies v. Meyers,* supra, the court affirmed the trial court which held that an open-air chapel and an acre surrounding it, as well as the minister's residence with a surrounding acre would be exempt. We see no reason why that separate portion of the building that is used "primarily as a place of regular religious worship" cannot be exempt. Here, the jury in Special Issue 4 found that 35% of the building at 301–303 S. Pioneer Drive was used during 1980 by the church primarily as a place of regular religious worship. We hold there is some evidence to support that finding.

1978 and 1979 TAXES

In Special Issue 1, the jury failed to find that during the years 1978 and 1979 a portion of the property at 301–303 S. Pioneer Drive was used by the Highland Church of Christ exclusively as a place of religious worship. The court instructed the jury, pursuant to Tex.Rev.Civ.Stat.Ann. art. 7150, sec. 1a, as follows:

> You are instructed that the term "actual places of religious worship" shall include property owned by a church or by a strictly religious institution or organization, including the personal property therein and the grounds attached to such buildings necessary for the proper use and enjoyment of a religious faith, and to effect accompanying religious, charitable, benevolent and educational purposes by the dissemination of information on a religious faith through radio, television, and similar media of communication.

The church argues that this finding is against the great weight and preponderance of the evidence. We do not reach this point. In Special Issue 5, the jury failed to find that the tax assessors waived the "formal requirement for applying for exemption." The church contends that the evidence conclusively establishes that the taxing authorities waived the requirement that the church must apply for an exemption, or alternatively, that the jury's finding is against the great weight and preponderance of the evidence.

Until Article 7150 was repealed, effective January 1, 1980, churches were required to file a sworn itemized statement seeking an exemption. The Highland Church of Christ did not file a written application for an exemption until October of 1980.

When deciding if the evidence conclusively establishes that the taxing authorities waived the formal requirement for applying for an exemption, we will consider only the evidence supporting the finding. When passing on the church's great weight and preponderance of the evidence point we will consider all the evidence. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

Leroy Powell, Tax Assessor-Collector for the City of Abilene, Abilene Independent School District and the West Central Texas Municipal Water District, testified that for an exemption to be granted, an organization would have to request one in writing. Richard Petree, Tax Assessor-Collector for Taylor County and the State of Texas, testified that his office did not investigate a possible exemption until an application was filed. There is some evidence to support the jury's finding. There is evidence that the tax assessors do not always follow the "procedure set out in Article 7150 for granting exemptions to churches," but we cannot say that the jury's failure to find that the tax assessors waived the formal requirement for "applying for exemption" is against the great weight and preponderance of the evidence.

There was no requirement in 1980 that the church apply for an exemption. Article 7150, which required the filing of an application for exemption in 1978 and 1979, was repealed effective January 1, 1980. Section 11.20 of the Property Tax Code became effective January 1, 1980. Section 3(f) of the Acts, 66th Leg. p. 2315, ch. 841. However, Section 11.43 of the Property Tax Code, which requires the filing of an exemption application, does not become effective until January 1, 1982. Section 3(a) of the Acts, 66th Leg. p. 2313, ch. 841.

The Highland Church of Christ is entitled to a tax exemption for the year 1980 for 35% of the building in question as found by the jury in Special Issues 3 and 4. The church is not entitled to an exemption for the years 1978 and 1979 because the church failed to apply for an exemption as then required by Article 7150.

The judgment of the trial court is affirmed as to the taxes for 1978 and 1979. The judgment of the trial court denying the church an exemption for the year 1980 is reversed and judgment is rendered that 35% of the building in question is exempt from ad valorem taxes for that year.