**KERRVILLE INDEPENDENT SCHOOL DISTRICT, Appellant,**

v.

**SOUTHWEST TEXAS ENCAMPMENT ASSOCIATION, Appellee.**

No. 04–82–00435–CV.

Court of Appeals of Texas, San Antonio.

April 18, 1984.

Rehearing Granted in Part, Denied in Part May 16, 1984.

Shelburne J. Veselka, Austin, for appellant.

David W. Hilgers, Austin, Michael Jones, Tyler, for appellee.

Before ESQUIVEL, REEVES and TIJERINA, JJ.

## OPINION

REEVES, Justice.

This appeal is brought by the Kerrville Independent School District to challenge the judgment of the trial court exempting from taxation 64 acres and adjoining lots owned by the Southwest Texas Encampment Association (which is owned by the Southwest Texas Conference of the United Methodist Church), which judgment was based on jury findings that said properties were used as an actual place of worship.

The facts germane to our decision necessitate we go back to the time of acquisition of the land by the Methodist Church. The land was received as a gift in 1923 for the purpose of establishing a camp in Kerr County. Originally, the land consisted of

200 acres of unimproved land situated outside of the city limits of Kerrville in the scenic but rustic hill country. Financially unable to develop the entire 200 acres, appellant subdivided and sold a portion of the land to ministers and lay people who wanted vacation homes near the camp. The proceeds from the sale of the lots were used for the development of the 64 acre tract now called Mount Wesley. In time, all of the land which had been subdivided into lots had been sold except approximately 23 lots which are situated south and across a public street from the 64 acre tract known as Mount Wesley. Appellee has not attempted to sell the lots, choosing that the land remain in its natural state to serve as a buffer area to maintain the hill country atmosphere of the main camp grounds. These lots vary in depth from 180 feet to 300 feet. All of the property is now within the corporate limits of the city of Kerrville with residential property abutting the east, west and north boundary lines of Camp Wesley.

The majority of the buildings situated on Mount Wesley are located on the southern part of the 64 acre tract. These buildings consist of two large meeting halls, a dining hall and conference center, meeting rooms, dormitory units, a chapel, administration building, 130,000 gallon swimming pool, an outdoor pavilion, a gazebo and an area which has been cleared for camping and sporting events. The remainder of Mount Wesley consists of land in its natural state. Its terrain is rugged and hilly. An outdoor chapel has been built on a side of a hill. At the top of the hill are two crosses. There are camp sites and a trail that meanders through this unimproved area. Appellant granted tax exempt status to the director's residence, one outdoor worship area, a chapel called Moore Auditorium, the Alma Thomas Mission Center and five acres of land.

Appellee's witnesses testified the facility is in use for approximately 150 days a year, that groups ranging in size from 6 to over 500 attend Mount Wesley, coming predominantly from the congregations of the Methodist Church located in south Texas. Since some of these groups come from long distances, the dining rooms, dormitories and other sleeping and cooking accommodations are necessary to its operation. On occasion Mount Wesley accommodates from 90 to 100 different groups at one time. The swimming pool is in use in the summer for recreation by all ages. The programs planned at Mount Wesley are geared for fifth grade students through senior adults.

The natural and rustic atmosphere of the Texas hill country is an important element to the worshipful attitude sought at Mount Wesley. The director of Mount Wesley, who is responsible for the programs conducted stated, "Basically the format for all these groups is simply what we would consider a religious retreat, which is to bring people from their everyday environment so that in a highly specialized environment such as the church camp they can gain further training and inspiration for their Christian living."

Small groups, especially the younger attendees, stake out their select location in the undeveloped area in which they meet daily for training and worship. The trail is used primarily for individual meditation and prayer. Small groups conduct worship services at the crosses on top of the hill. A witness described the activities and the atmosphere at Mount Wesley as follows:

Well it's a little difficult to describe what the affect is, except it provides a setting in which one can feel close to one another and one can feel close to God and understand a little bit more of what he expects of you.

The users of Mount Wesley's location are so varied, we sometimes have a worship service on top of the mountain in the morning, often a vesper service in the afternoon on the hillside overlooking the valley.

There was worship in the dormitories in the evening at the close of the day. Always worship around the dining room. So the full community life was a partici-

pation in what we understand to be the full meaning of worshipping God.

Appellant submits three points of error: one point questions the constitutionality of the legislature's definition of worship. The other two points of error contend that the evidence was legally insufficient to support the jury findings that the 64 acres and the adjoining lots were actual places of worship.

■ The definition that appellant asserts is unconstitutional and which was used by the trial judge in his charge to the jury, is found in TEX.TAX CODE ANN. § 11.20(e) (Vernon 1982), which defines religious worship as "individual or group ceremony or meditation, education, and fellowship, the purpose of which is to manifest or develop reverence, homage, and commitment in behalf of a religious faith." Appellant contends the definition is overly broad in that it expands the exemption set forth in article VIII, § 2(a) of the Constitution beyond its intended limits. TEX. CONST. art. VIII, § 2(a).[1] We disagree. The Constitution permits the legislature to exempt from taxation actual places of worship, but fails to define the term. The legislature's definition, of course, must constitute a reasonable interpretation of the constitutional language in order to implement the intent of the constitutional framers. *Swearingen v. City of Texarkana*, 596 S.W.2d 157 (Tex. Civ.App.—Texarkana 1979, writ ref'd n.r. e.). Our Supreme Court in *Davies v. Meyer*, 541 S.W.2d 827 (Tex.1976), acknowledged the difficulty in defining worship, conceding any definition may be inadequate to embrace the full meaning of worship and cited the definition found in Webster's New International Dictionary 2d edition, to-wit:

Act of paying devine honors to a deity; religious reverence and homage. Adoration or reverence paid to God, a being viewed as God, or something held sacred from a reputed connection with God.

*Davies, supra* at 829. *Davies* also cited *Church v. Bullock*, 104 Tex. 1, 109 S.W. 115 (1908), in which the court defined the phrase as follows:

As used in the Constitution the phrase "place of worship" specifically means a place where a number of persons meet together for the purpose of worshiping God. [Citation omitted.] The Century Dictionary gives this definition: "A building or part of a building set apart for any purpose—as a place of worship." The worship of God is not prohibited in any place, but *we are of the opinion that the spirit of the Constitution would include any place* at which the worship might be indulged in so continuously and in such a manner as to give it the character of "a place of worship." [Emphasis ours.]

It is evident that the court in *Church* did not limit an "actual place of worship" to an enclosed structure. This is confirmed in the *Davies* decision in that the court affirmed the trial court in its decision that an open-air chapel and one-acre surrounding it was exempt.

■ The legislative definition given in § 11.20(e) was used in *Highland Church of Christ v. Powell*, 644 S.W.2d 177 (Tex.App. —Eastland 1982, writ ref'd n.r.e.). In that case the court upheld the trial court's decision that approximately 35% of a building owned by appellant which was used to prepare and disseminate the gospel through a radio and television ministry was an actual place of worship. The testimony in *Highland* was that this type of ministry was an extension of the ministry of the church and the end result was meditation, worship, education and the propagation of the gospel through this media and to those individuals who prepare the programs. We are of the opinion that the legislative definition set forth in § 11.20(e) is constitutional.

■ The remaining two points question the legal sufficiency of the evidence. The

---

1. TEX. CONST. art. VIII, § 2(a) provides that the legislature may exempt from taxation "actual places of religious worship, also any property owned by a church or by a strictly religious society for the exclusive use as a dwelling place for the ministry of such church or religious society."

standard of review given in *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965), will be applied; we will consider only the probative evidence and inferences tending to support the judgment.

■ Appellant contends the evidence is conclusive that the primary use of those areas not exempted do not qualify for exemption as they are used for religious education, crafts, recreation, leadership training, retreats and conferences. But the jury found to the contrary; the jury found that the entire acreage is used as an actual place of worship. We are again guided by *Davies* that an actual place of religious worship, as those words are used in the constitution and statutes, is a fact issue upon which the claimant has the burden of proof. The dormitories, cooking facilities, swimming pool and recreation program cannot, by and of themselves, defeat the exemption if the land itself would otherwise qualify. A program which is collateral to a religious program will not defeat an exemption which would otherwise be allowed. *Davies, supra* at 830; *Davis v. Congregation Agudas Achim*, 456 S.W.2d 459 (Tex.Civ.App.—San Antonio 1970, no writ). Attendees, for the most part, come from throughout south Texas and stay for several days. It is necessary and reasonable that housing facilities be made available, and it is also reasonable to assume that they could not engage in effective worship during their entire stay. We are of the opinion there is probative evidence to sustain the finding that the entire 64 acres known as Mount Wesley is an actual place of worship.

■ The jury found that approximately 23 unimproved lots situated across a public street from the 64 acre tract (Mount Wesley) were also actual places of worship. The entrance to Mount Wesley, the director's residence, and a small house, both of which are owned by appellee, are also located on this street. Appellee offered no evidence as to any program or worship that actually took place on the lots. There was a deliberate decision made by appellee not to sell the lots in order to maintain a hill-country atmosphere at Mount Wesley. Most of the buildings on Mount Wesley are situated on the southern part of the 64 acre tract. Residents living in a subdivision called Mount Wesley Subdivision must travel this public street as do those who come to Mount Wesley as attendees. The testimony of one witness clearly sets forth the purpose of appellee's leaving the lots in their present condition. The testimony was:

Q: Now, is there a difference in the kind of worship experience that can take place in the natural wooded pastural setting as opposed to what can occur elsewhere?

A: Well, for me, yes. There is no doubt about it. Through this particular part of the country, the hill country, it's very easy to have a worship experience. Especially on the hilltop with the trees and the birds and what have you. Around nature is what I'm trying to say, yes.

Q: Do you think it's important to preserve the natural setting in order to provide the kind of worship experience that the Church has been providing?

A: Yes I do. Very much so, believe that. And I've used ... I didn't mention it, but at one time, I was a vice-chairman of the Board of Trustees and this is one of our high aims, to keep that type of experience available for all our people.

Q: There has been some testimony about a number of lots that are located across the road from the camp. Do you think it's important to preserve those in a natural setting?

A: Yes, as I remember my experience with the Board of Trustees, the reason we wanted to keep those was to kind of ... of a ... what you call a buffer area. At one time, we owned considerably more property and had to sell it off because of hard times. And we did keep these for the specific reason, not to let us get closed in. And some of you probably know at

one time, Mount Wesley was way out of town. That's not so anymore. Another witness stated that the development of the lots would be detrimental to the worship. The fact that development of the lots might prove detrimental or detract from the worshipful attitude does not, in itself, make the lots an actual place of worship.

█ Appellee, in support of its buffer zone theory, has cited *City of Houston v. Cohen,* 204 S.W.2d 671 (Tex.Civ.App.—Galveston 1947, writ ref'd n.r.e.). In *Cohen,* the City of Houston brought suit against the First Presbyterian Church for delinquent taxes on a vacant lot approximately 85′ × 125′ which was adjacent to the church buildings that were exempted from taxes by reason of their use as an actual place where the congregation worshipped. The lots were used as a church yard and its purpose was to enhance the attractiveness of the church building. The open area provided light and air to the church building and served a barrier to the noise and confusion incident to downtown traffic. It was also used for church activities which could not be conducted within the building. The trial court found that the lots were an actual place of worship and in an affirming decision of the trial court, the appellate court stated:

> [T]he fact that the land sought to be taxed was the yard of the church which was used by the Church for those natural and practical purposes for which such yards are customarily used, and for necessary light, air and appropriate ornamentation, must be presumed to have been resolved by the trial court in support of the judgment rendered.

*Cohen, supra* at 674. In this case, we find no probative evidence that the lots were used in any capacity other than to further the atmosphere of the rustic hill country. This does not, standing alone, rise to an actual place of worship. We sustain appellant's point of error that there was no legally sufficient evidence to support the jury's answer that the lots constitute an actual place of religious worship.

We affirm the decision of the trial court in its judgment that that portion of the 64 acre tract of Mount Wesley Conference Center not now exempted from taxes, is an actual place of religious worship and not subject to ad valorem taxes by appellant, and reverse and render judgment that the land designated as Lot 1 of Block 1 and the adjoining 100 feet of Lot 1, Lots 36, 37 and 38, of Block 2, Lots 1 through 5 and Lots 34 through 38, of Block 3, and Lots 1 through 9 and part of Lot 10, of Block 5, do not constitute actual places of worship and are subject to assessment for ad valorem taxes by appellant. The court costs will be paid one-half by appellant and one-half by appellee.

## ON APPELLANT'S MOTION FOR REHEARING

█ Appellant, Kerrville Independent School District, in its motion for rehearing has called to our attention our error of assessing one-half of the costs of the appeal to Kerrville Independent School District. A school district is exempt from payment of any court costs in a suit to recover taxes. *Nacogdoches Independent School District v. McKinney,* 513 S.W.2d 5 (Tex.1974); TEX.TAX CODE ANN. § 33.49 (Vernon 1982); TEX.R.CIV.P. 448.

The judgment heretofore entered in this Court is hereby amended as follows: All court costs incurred by appellee, in this Court are, hereby adjudged against it and no costs are adjudged against appellant, Kerrville Independent School District. Appellant's motion for rehearing, to the extent that it complains of our assessment of costs is granted. In all other respects, the motion is denied.