## TEXAS CONFERENCE ASSOCIATION OF SEVENTH–DAY ADVENTISTS, Appellant,

v.

## LEANDER INDEPENDENT SCHOOL DISTRICT, Appellee.

No. 13779.

Court of Appeals of Texas, Austin.

March 7, 1984.

Rehearing Denied April 18, 1984.

C.J. Humphrey, Amarillo, for appellant.

Albert M. Walker, Jr.; Henry Steen, Jr., Law Offices of Gates Steen, Austin, for appellee.

Before PHILLIPS, C.J., and EARL W. SMITH and GAMMAGE, JJ.

PHILLIPS, Chief Justice.

The Texas Conference Association of Seventh-Day Adventists appeals from the judgment of the trial court which, in this ad valorem tax suit, rendered judgment *non obstante veredicto* in favor of Leander Independent School District.

We reform the judgment and, as reformed, affirm it.

The association brought suit seeking a declaratory judgment to determine whether all or any part of certain real property qualified for exemption from ad valorem taxes under various statutes. The association contended that through the 1979 tax year, a tract of 864 acres, owned by the association and designated "Nameless Valley Ranch," was tax exempt under operation of Tex.Rev.Civ.Stat.Ann. art. 7150, § 2a (repealed by Acts 1979, 66th Leg., p. 2330, ch. 841, § 6(d), eff. Jan. 1, 1980), and under operation of Tex. Const.Ann. art VIII, § 2 (Supp.1982). The association further asserted that the ranch was likewise exempt from the 1980 tax year forward under operation of Tex.Tax.Code Ann. § 11.19 (Acts 1979, 66th Leg., p. 2315, ch. 841, eff. Jan. 1, 1980, prior to its amendment by Acts 1981, 67th Leg., 1st C.S., p. 129, ch. 13, § 35, eff. Jan. 1, 1982),[1] and alternatively that a portion of the ranch was exempt under *id.* § 11.20 (1982).[2] Leander filed a general denial, and in addition filed a counterclaim for ad valorem

taxes assessed on the ranch for the years 1977, 1978, and 1979, together with penalties, interest, and costs provided by law.

The trial court ruled that several special issues answered favorably to the association were either immaterial or unsupported by the evidence; it also ruled that the one issue answered against the association's interest was supported by the evidence. The trial court decreed that the ranch was not exempt from taxation under art. 7150, § 2a nor under §§ 11.19 & 11.20 of the Tax Code; it further ordered that Leander recover most of the taxes sought[3] together with interest and penalty as provided by law. By twenty-two points of error the association contends that the trial court erred in disregarding the jury's answers to special issues and in failing to render a judgment favorable to the association's claim and adverse to Leander's counterclaim.

Section 2a of Art. 7150 and Sections 11.-19 & 11.20 of the Tax Code exempt from taxation certain types of properties. They have a common source in the Texas Constitution, which provides that any law exempting property from taxation, other than property made eligible for exemption by the Constitution, shall be null and void. Tex. Const.Ann. art. VIII, § 2 (Supp.1982). This constitutional provision sets out certain classes of property which *may* be legislatively exempted from taxation; it does not specifically exempt such classes of property. *Id.; see* Interpretive Commentary, 2 Tex. Const.Ann. 478 (1955). Therefore, the association can claim no exemption under authority of Art. VIII, § 2 of

---

**1.** Although the trial court's judgment was signed on May 18, 1982, trial of this case was had on August 4, 1980. Therefore the focus of this appeal must be on Section 11.19 as it existed between its effective date, January 1, 1980, and the date it was effectively amended, January 1, 1982.

**2.** Section 11.20 of the Tax Code was derived from Tex.Rev.Civ.Stat.Ann. art. 7150, § 1 (repealed by Acts 1979, 66th Leg., p. 2330, ch. 841, § 6(d), eff. Jan. 1, 1980). Although Section 1 of Art. 7150 was arguably applicable to appellant's

position as it relates to tax years 1977–79, it was not so pleaded. Only Section 11.20 was pleaded, specifically as it related to the tax years 1980 and beyond.

**3.** The trial court's decree conforms to Leander's counterclaim as to taxes owed, except as it related to an 8.2 acre portion of the ranch; the court allowed approximately $180 less than Leander sought. The record does not reflect the reason for the discrepancy. However, Leander does not here complain about the judgment.

the Constitution without additionally relying on a specific exemption statute.

## I.

The association pleaded that the ranch was exempt during tax years 1977–79 under authority of Section 2a of Art. 7150, which provided, in relevant part, as follows:

Religious, educational and physical development associations. That all property owned or used exclusively and reasonably necessary, in conducting any association engaged in the joint and threefold religious, educational and physical development of boys and girls, young men and young women, operating under a State or National Organization of like character, and not leased or otherwise used with a view to profit other than for the purpose of maintaining the buildings and Association ... shall be exempt from taxation....

Article VIII, § 2 of the Texas Constitution provides, in relevant part, as follows:

[T]he legislature may, by general laws, exempt from taxation ... property used exclusively and reasonably necessary in conducting any association engaged in promoting the religious, educational and physical development of boys, girls, young men or young women operating under a State or National organization of like character....

■ In ascertaining the ultimate issues which determine tax exemption under Section 2a of Art. 1750, we initially note that ownership of the subject property cannot be included therein. Although in Section 2a of Art. 7150, "owned" is listed disjunctively with "used exclusively" (or with "used exclusively and reasonably necessary"), "owned" cannot substitute for either of these latter phrases, since such a construction would serve to expand the constitutionally exemptable class. Ownership of the property is not referred to in Art. VIII, § 2 of the Constitution.

■ Therefore, property is exempt under Section 2a of Art. 1750 if: (1) the property is used exclusively in conducting an associ-

ation; (2) the property is reasonably necessary in conducting such association; (3) such association is engaged in the joint and threefold religious, educational and physical development of boys and girls, young men and young women; (4) such association is operated under a state or national organization which is engaged in the joint and threefold religious, educational and physical development of boys and girls, young men and young women; and, (5) the property is not leased or otherwise used with a view to profit other than for the purpose of maintaining the buildings and association. These ultimate issues must be proved to gain tax exemption. Although ultimate issue five is not specified in the Constitution, its addition does not expand the class of property which may be constitutionally exempted; instead it restricts such class. This is properly within the jurisdiction of the legislature.

The first three special issues submitted by the trial court relate to tax years 1977–79. None of these special issues contain ultimate issues four and five, listed above. However, only controverted issues need be submitted to the jury; no jury finding is necessary to establish undisputed facts. *Wright v. Vernon Compress Company,* 156 Tex. 474, 296 S.W.2d 517 (Tex.1956). As for ultimate issue four, there was unchallenged testimony that the association was a Texas corporation, operating under a statewide structure of member Seventh-Day Adventist churches; that the association was part of a larger structure (comprised of other associations which were each comprised of member Seventh-Day Adventist Churches) which was worldwide in scope; that the association sponsored youth clubs, open to children regardless of religious persuasion, the purpose of which was to aid youth in developing mentally, spiritually and physically; and that one of the goals of the Seventh-Day Adventist Church was to help children and youth to develop physically, mentally, and spiritually. This uncontroverted testimony conclusively established that the association was operating under a state *and* national organization which is engaged in the reli-

gious, educational and physical development of boys, girls, young men, and young women.

As for the fifth ultimate issue, it was stipulated at trial that the ranch was "operated in a way that does not result in accrual of distributable profits, realization of private gain resulting from payment of compensation in excess of a reasonable allowance for salary or other compensation for services rendered, or realization of any other form of private gain." This is sufficient to conclusively establish that the property was not used with a view to profit.

■ We sustain appellant's seventh point of error, which provides that the trial court erred in deeming immaterial special issue number one, which, along with the jury's response, provided as follows:

### SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that prior to January 1, 1980, Texas Conference Association of Seventh-Day Adventists, in operating Nameless Valley Ranch was engaged in the joint and threefold religious, educational and physical development of boys and girls, young men and young women?
Answer: "We do" or "We do not."
ANSWER: We do

This issue was directly material to the third ultimate issue, which was whether the association was *engaged in* threefold development.

■ The trial court also held that the jury findings on special issues two and three have no support in the evidence, and held that the answers to such issues should have been "we do not." To sustain the action of the trial court in rendering judgment *non obstante veredicto*, it must be determined that there is no evidence upon which the jury could have made the disregarded finding or findings. *Dodd v. Texas Farm Products Co.*, 576 S.W.2d 812 (Tex. 1979). We may consider only the evidence and the reasonable inferences therefrom which support the jury's answers. *C & R Transport, Inc. v. Campbell*, 406 S.W.2d 191 (Tex.1966). We sustain the association's first and second points of error, which advance that the second and third special issues are supported by the evidence.

The second special issue, with the jury's response, provided as follows:

Do you find from a preponderance of the evidence that Texas Conference Association of Seventh-Day Adventists, prior to January 1, 1980, was a religious, educational and physical development association which was engaged in the joint and threefold religious, educational and physical development of boys, girls, young men and young women?
Answer: "We do" or "We do not."
ANSWER: We do

There was a great deal of testimony concerning the youth clubs conducted by the association. The ranch's director, Mr. Moore, testified that the purpose of the youth clubs was to develop children and youth "in a holistic sense physically, mentally, and spiritually." He testified that the Seventh-Day Adventists place "an emphasis [on] the training of their children and youth in helping them to develop physically, helping them to develop mentally, and helping them to develop spiritually...." He testified in detail as to the activities in which the children and youth were engaged at the ranch: these included worship services, academic tutoring, and numerous physical activities. This evidence is sufficient to establish that the association was engaged in the threefold development.

Leander contends that appellant association is merely a church or "religious association," and that it is therefore not a "religious, educational and physical development association." Leander focuses on the *primary purpose* of the association, and argues that the evidence conclusively establishes that such primary purpose is the advancement of religion.

Section 2a of Art. 7150 does not refer to a primary purpose; it only requires that

the organization *engage in* threefold development. In a related portion of Art. 7150, § 2a, exempt associations are referred to as "religious institutions." Section 2a of Art. 7150 must be distinguished from its successor statute, Section 11.19 of the Tax Code, which does require an association to *engage primarily* in the threefold development.

 The third special issue, the jury's response, and a related instruction provided as follows:

> Do you find from a preponderance of the evidence that Texas Conference Association of Seventh-Day Adventists used all of the subject properties exclusively and as reasonably necessary in conducting the joint and threefold religious, educational and physical development of boys, girls, young men and young women from the date said properties were acquired through 1979?
>
> Answer: "We do" or "We do not."
>
> ANSWER: <u>We do</u>
>
> You are instructed that the term "exclusively" as used in the foregoing Special Issue does not prohibit the incidental use of the subject properties by other persons, associations or organizations.

We initially note that although the statute requires only that the property be used in conducting the association, we think that necessarily implied in such a provision is the requirement that there be some nexus between the use of the property and the activity which qualifies the institution for exemption. Since the association does not here complain as to the form of the special issue, we will test the evidence against the strict nexus contained therein: the property must be exclusively used and be reasonably necessary in accomplishing the threefold development.

There is a wealth of testimony to support the finding that the entire ranch was reasonably necessary in accomplishing the threefold development. As stated above, Mr. Moore testified in detail as to the activities carried on at the ranch. He testified that it was necessary to have the entire acreage for carrying out the purposes of the camp; that to carry out the horsemanship program it was necessary to use a neighboring ranch; and that the association had voted to develop the ranch as a "youth facility for purposes [of developing] boys and girls and young men and young women physically, mentally, and spiritually." A Mr. Taylor, the director of a Baptist youth program, testified in response to hypothetical facts that 846 acres of land is a reasonable and necessary amount of land to use in conducting a youth camp and facility. A Mr. Colquitt, the administrator of a Baptist camp, testified similarly.

The testimony also supports the finding that the ranch was used exclusively in conducting the threefold development. Mr. Moore testified that the association's youth groups utilize the ranch for the entire twelve months of the year, and that "the reason we have the camp" is to serve the boys and girls and young men and women.

Leander contends that the evidence conclusively establishes that the camp was also utilized by adult groups, and reasons that such use precludes a favorable finding as to special issue number three. Mr. Moore testified regarding adult groups which used the ranch.

From all of the testimony an inference can be drawn: the purpose of permitting adult use of the camp was to directly and indirectly support the youth work. Mr. Moore testified that "[i]f it weren't for the support of adults and their identification with [the ranch], we wouldn't have children coming to [the ranch], and as director of [the ranch] it's a very vital concern of mine that others besides children come to our ranch so that they can see what we have so that they can support our program by promoting the participation of their youth in our program [and] supporting us with the financial needs we have...." Also, Mr. Taylor responded affirmatively when asked if, in conducting a youth camp, it was "necessary and imperative that adults and older men and women be enlisted to promote and assist in the overall purposes, services, and outreach of such a camp."

Although they are somewhat duplicitous,[4] special issues one through three reflect ultimate issues one through three. We therefore sustain the association's points of error eight through sixteen: the trial court erred in holding that none of the land in question was tax exempt for years 1977–79; in ordering that Leander recover judgment for taxes assessed against the property for 1977–79; in affixing a tax lien against the land; and in ordering the land to be sold for payment of said taxes. We sustain the association's seventeenth point of error to the extent that it provides that the trial court erred in holding that the association has failed to present any evidence having probative force to show that the property is exempt from taxation under Section 2a of Art. 7150.

## II.

[7, 8] In its nineteenth point of error the association contends that the trial court erred in failing to render judgment that the entire ranch was tax exempt for 1980 under authority of Section 11.19 of the Tax Code. We overrule this point.

An essential element to be proved in establishing tax exemption under Section 11.19 (both the current and former versions) is that the association must *engage primarily* in promoting the threefold spiritual, mental, and physical development of boys, girls, young men, or young women. The addition of the word "primarily" serves to restrict the constitutionally exemptable class of property, and thus does not offend Art. VIII, § 2 of the Constitution.

The jury answered special issue number five negatively; that issue inquired whether the association had been "primarily engaged as a youth development association from January 1, 1980, to the present time." This failure to find is supported by the following testimony of Mr. Moore:

Q [by Leander's attorney] Now, as I understand it—and please correct me if I am wrong—the purpose of the

Texas Conference Association deals with and is concerned with the church members of all ages and all persons who are members of the church. It's not a youth—Would you describe the Texas Conference Association as a youth development organization?

A I would say that the Texas Conference looks at the needs of the entire church.

Q Then, you would characterize it as not being a youth development organization?

A One of its vital purposes is youth development. It is not exclusively a youth development, but the philosophy of the Seventh-Day Adventist church focuses tremendously upon its youth.

Q But don't you also have—The Texas Conference has a wide variety of programs for all of these members; is that not correct?

A That's right.

Q And I believe the Texas Conference has recently acquired a nursing home for the elderly. Is that—

A We have several nursing homes for the elderly. I'm not sure that it was recently acquired.

Q So, could you ever reasonably characterize the Texas Conference as a youth association?

A I could not say it is exclusively, the Texas Conference is not exclusively a youth association.

Q I mean, couldn't you say that it's not even primarily a youth association?

A I suppose I could say that.

## III.

We sustain the association's twentieth point of error, in which the association contends that the trial court erred in refusing to render judgment that "Mock Lodge," which is located on the ranch, and the

---

**4.** No objection to these issues was lodged by Leander on this basis. It did object that special

issue number one is "not an ultimate factual issue of the case and is merely superfluous."

buildings and grounds within a 1000 foot radius of Mock Lodge, were tax exempt for the year 1980 under authority of Section 11.20 of the Tax Code. Section 11.20 provides, in relevant part, as follows:

(a) An organization that qualifies as a religious organization as provided by Subsection (c) of this section is entitled to an exemption from taxation of:

(1) the real property that is owned by the religious organization, is used primarily as a place of regular religious worship, and is reasonably necessary for engaging in religious worship;

\* \* \* \* \* \*

(c) To qualify as a religious organization for the purpose of this section, an organization (whether operated by an individual, as a corporation, or as an association) must:

[meet certain specified criteria]

\* \* \* \* \* \*

(d) Use of property that qualifies for the exemption prescribed by Subdivision (1) or (2) of Subsection (a) of this section for occasional secular purposes other than religious worship does not result in loss of the exemption if the primary use of the property is for religious worship and all income from the other use is devoted exclusively to the maintenance and development of the property as a place of religious worship.

(e) For the purpose of this section, "religious worship" means individual or group ceremony or meditation, education, and fellowship, the purpose of which is to manifest or develop reverence, homage, and commitment in behalf of a religious faith.

Special issue number seven, the jury's response, and an accompanying instruction provided as follows:

Do you find from a preponderance of the evidence that Mock Lodge and the buildings and grounds within a 1,000 foot radius of Mock Lodge have been used primarily by Texas Conference Association of Seventh-Day Adventists as a place of regular religious worship and is reasonably necessary for engaging in religious worship?

Answer: "We do" or "We do not."

ANSWER: We do

You are instructed that, as used in the foregoing Special Issue, the term "religious worship" means individual or group ceremony or meditation, education, and fellowship, the purpose of which is to manifest or develop reverence, homage, and commitment in behalf of a religious faith.

In connection with the foregoing Special Issue, you are further instructed that the use of said property for occasional secular purposes other than religious worship will not keep the use from being primarily for religious worship if all income from the other use is devoted exclusively to the maintenance and development of the property as a place of religious worship.

In its appellate brief, Leander concedes that the appellant association is a religious organization under Section 11.20(c). It concedes that the association qualifies for an exemption under Section 11.20(a)(1) for any real property it uses primarily as a place of actual religious worship. Leander argues, however, that the evidence does not support the finding that Mock Lodge and the surrounding improvements were so used.

Leander contends that the legislature, in defining "religious worship" (in Section 11.-20(e)), has expanded the meaning of "religious worship" beyond that which is constitutionally permissible. Leander did not object to inclusion of this definition in special issue number seven.

■ The Constitution provides that the legislature may exempt from taxation actual places of religious worship; "religious worship" is not therein defined. Tex. Const.Ann. art. VIII, § 2(a) (Supp.1982). In determining the meaning of a constitutional provision, the courts will consider and give weight to a construction assigned by the Legislature. *Moore v. Edna Hospital District*, 449 S.W.2d 508 (Tex.Civ.App. 1969, writ ref'd n.r.e.). We are unable to

say that the construction here challenged is unreasonable or contrary to the commonly understood meaning of the term "religious worship."

Leander's position is based in part upon a traditional distinction between "places of religious work" and "places of religious worship." *See Swearingen v. City of Texarkana*, 596 S.W.2d 157 (Tex.Civ.App.1979, writ ref'd n.r.e.). We need not here decide whether or to what extent this distinction comports with Section 11.20(e), since we hold that here there was some evidence to support the jury's finding that the area in question was used primarily as a place of regular religious worship. *Highland Church of Christ v. Powell*, 644 S.W.2d 177 (Tex.App.1982, writ ref'd n.r.e.); *see Davies v. Meyer*, 541 S.W.2d 827 (Tex. 1976).

Mr. Moore testified (or affirmatively responded so as to indicate) that Mock Lodge was used as a chapel and cafeteria; that it was "our primary worship center"; that it was approximately a thousand feet from Mock Lodge to the farthest cabin (excluding the rangers' cabins and warehouses); that the purpose of the improvements that are within the thousand foot radius of Mock Lodge is to manifest or develop reverence, homage, and commitment in behalf of a religious faith; that for that same purpose such improvements are "used regularly by individuals or group ceremonies or meditation, education and fellowship...."; that within the specified area are sixteen cabins, a director's cabin, a staff cabin, a pump house, and perhaps a part of a warehouse; that the area includes the sleeping areas and was the headquarters of the operation of the whole camp; and that the area encompassing the cabins and Mock Lodge was the place within the camp where there was a "focus upon our worship services, and things of that nature...."

After considering all of the evidence, we hold that there was some evidence to support the jury's answer to special issue number seven. The trial court erred in holding to the contrary.

## IV.

In points of error number twenty-one and twenty-two, the association complains of the exclusion of certain evidence, which was offered to prove that appellant complied with the statutory requirement that a landowner request tax exemption from the taxing authority. Leander responds that the evidence was not relevant because Leander did not seek to deny that the association requested the exemption. At trial, Leander stipulated that they had received a letter from the association, in which the association requested an exemption. Leander's tax assessor-collector testified that he received such a request in 1977. If there was error in excluding the above-mentioned letter, and related material, such was harmless since the evidence conclusively establishes that the association requested an exemption. Points of error twenty-one and twenty-two are overruled.

The judgment of the trial court is reformed to reflect that the property which is the subject of this suit was exempt from ad valorem taxation, during the years 1977–79, under Section 2a of Art. 7150, and to reflect that Mock Lodge and the buildings and grounds within a one thousand foot radius of Mock Lodge were exempt from ad valorem taxation, from January 1, 1980 until the trial's conclusion, under Section 11.20 of the Tax Code. To the extent that it is not inconsistent with this opinion, the trial court's judgment is otherwise affirmed.

EARL W. SMITH, Justice, dissenting.

I respectfully dissent to part I of the majority's opinion reversing the trial court's judgment as to taxes owed for the years 1977–1979. The majority's statement and interpretation of ultimate issue (4) as one of the criteria for exemption is not consistent with the language of Tex.Rev. Civ.Stat.Ann. art. 7150 § 2(a) (1960) or the act as a whole. The clause, "operating under a State or National Organization of like character," refers to the *nature* or *character* of the association as one operating for the joint and threefold purpose stat-

ed in section 2(a) of the article. Special issues 1, 2, and 3 set out in the majority opinion, are immaterial unless there is first a finding that the association was operating under an organization that could be characterized as one for the joint and threefold development of boys and girls. Thus, the trial court acted properly in disregarding the jury's answers to these special issues.

The evidence clearly illustrated that the association is not an organization of that nature. The association's charter sets out the purposes of the Texas Conference of Seventh-Day Adventists as follows:

> SECOND: The particular business and objects for which this corporation is formed are for the purpose of diffusing moral and religious knowledge throughout the entire world by means of churches, organizations, publishing houses, medical or health institutions, educational institutions, publications, missionary agencies, and all other instrumentalities and methods appropriate and available for and tending to the advancement of such ends and aims, and to that end to receive loans, gifts, and deposits of money; to issue notes; to grant annuities; to make loans; to acquire, possess, and hold title to real, personal, and mixed estates in this or foreign [sic] countries, either in trust or otherwise, by gift, bequest, devise, or purchase, and to have power to pledge, incumber, sell, and convey the same by such mortgage or other instrument of security or conveyance as may be suitable; it being, however, expressly declared that this corporation is not for personal profit or gain to anyone, but that all its property and effects must be used and expended in carrying into effect the aims, ends, and objects of its existence.

This, as well as other evidence particularly cited and quoted in part II of the majority opinion, shows that the Texas Conference was not the type of organization that this exemption was intended to cover.

The language of article 7150 § 2(a) quoted above and in the majority opinion is identical to language found in Tex. Const. Ann. art. VIII § 2 (1955) and as stated by the majority, cannot be expanded upon. The majority's interpretation is an unconstitutional expansion of this provision. *Houston v. South Park Baptist Church*, 393 S.W.2d 354, 356 (Tex.Civ.App.1965, writ ref'd).

The school district's restrictive interpretation of the meaning of article 7150 § 2(a) is also supported by the rules of construction of statutes. "Where a question of *exemption* from taxation is involved, the statute must be construed liberally in favor of the taxing authority, and strictly against the person claiming the exemption...." *Bullock v. Ramada Texas, Inc.*, 586 S.W.2d 651, 653 (Tex.Civ.App.1979, writ ref'd n.r.e.) (emphasis in original); *see also Bullock v. National Bancshares Corp.*, 584 S.W.2d 268, 272 (Tex.1979). The wording of article 7150 § 2(a) does not affirmatively show an exemption in favor of the association as required by the standard of *Bullock v. National Bancshares, supra.*

Texas Rev.Civ.Stat.Ann. art. 10 § 6 (1969) provides in part that "[i]n all interpretations, the court shall look diligently for the intention of the Legislature...." In construing statutes, courts must determine the legislative intent from the statute as a whole and construe it to give effect to the Legislature's purpose. *Citizen's Bank of Bryan v. First State Bank, Hearne*, 580 S.W.2d 344, 348 (Tex.1979). Article 7150 is divided into sections, most of which are headed by the type of organization which owns the property i.e., § 1 Schools and Churches, § 4(a) Districts and Authorities, § 5 County Buildings, etc., and then setting out what types of property are to be exempt. Thus the legislative intent is that the taxpayer must be the type of organization listed before the property listed may be exempt. While § 2(a) might be susceptible of the majority's construction if it were standing alone, the entire statute shows that the legislative intent was otherwise. *See Barr v. Bernhard*, 562 S.W.2d 844 (Tex.1978); *Calvert v. Texas Pipe Line*

**364**

*Company,* 517 S.W.2d 777 (Tex.1974); *Ex parte Roloff,* 510 S.W.2d 913 (Tex.1974).

Article 10 § 6 provides in *full* that "[i]n all interpretations, the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy." The old law in this case was no exemptions for organizations with the threefold purpose, specifically the YMCA. The Legislature passed present article 7150 § 2 to provide an exemption for the YMCA. The old version of the act, Tex.Rev.Civ.Stat. Art. 7507, subd. 1a (1914), was held unconstitutional in *City of San Antonio v. YMCA,* 285 S.W. 844 (Tex. Civ.App.1926, writ ref'd). In response to that opinion, article VIII § 2 was added to our State Constitution to allow an exemption for organizations of the nature of the YMCA because they did not fit within the exemptions for churches. *See* Interpretive Commentary Tex. Const.Ann. art. VIII § 2 (1955). Again, article 7150 § 2(a) follows exactly the language of the Constitution. The legislative intent was to provide an exemption for associations which operate under a State or National organization the character of which is to promote the religious, educational, and physical development of boys and girls, since they do not fit within the definition to be exempt as a church. *See City of San Antonio v. YMCA, supra.* Appellant fits within the church exemption [1] and not within the "exemption for religious, educational and physical development associations." I concur as to the exemption for the chapel and surrounding grounds and dissent in the holding that the entire ranch was exempt under article 7150 § 2(a) for the years 1977–79.

---

1. No contention is made by appellant that the entire 864 acres falls within the church exemp-

